762 So.2d 136 (2000)
Terry Getchell PAUL, et al.
v.
LOUISIANA STATE EMPLOYEES' GROUP BENEFIT PROGRAM, et al.
No. 99 CA 0897.
Court of Appeal of Louisiana, First Circuit.
May 12, 2000.
*138 James M. Johnson, APLC, Minden, for Plaintiff/Appellant Terry Getchell Paul, et al.
Elizabeth P. Blitch, Donna Guinn Klein, Deborah A. Van Meter, Margaret Diamond, McGlinchey Stafford, P.L.L.C., New Orleans, for Intervenor/Appellant Wichita General Hospital.
Carmelite M. Bertaut, Douglas L. Grundmeyer, Brent A. Talbot, Chaffe, McCall, Phillips, Toler & Sarpy, L.L.P., New Orleans, for Defendants/Appellees Laboratory Corporation of America Holdings and Roche Biomedical Laboratories, Inc., now known as Laboratory Corporation of America Holdings.
BEFORE: SHORTESS, C.J., PARRO, and KUHN, JJ.
PARRO, J.
This is an appeal by Terry Getchell Paul, individually and on behalf of her interdicted husband, George Larry Paul, from a summary judgment dismissing all claims against Laboratory Corporation of America Holdings. Wichita General Hospital, intervenor in this suit, also appeals this judgment. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND
The material facts in this case are not disputed. Shortly before June 27, 1996, George Larry Paul was offered a job with the Louisiana Department of Agriculture and Forestry (the Department) on the condition that he pass a drug test. The Department had a drug-free workplace policy and required all potential employees to submit to a pre-employment drug screen. The Department referred Mr. Paul to Work Force Consultants, Inc. (Work Force) for this purpose; Work Force sent Mr. Paul to the Shreveport facility of Laboratory Corporation of America Holdings (LabCorp) to actually collect and test his urine sample. On the morning of Thursday, June 27, a sample was collected and shipped by air courier and ground transport to LabCorp's site in Southhaven, Mississippi. On Friday, June 28, LabCorp reported to its client, Work Force, concerning Mr. Paul's urine specimen: "Specimen leaked in transit. Quantity not sufficient for testing. Please resubmit at no charge. We regret the inconvenience."
On Tuesday, July 2, Mr. Paul returned to LabCorp's Shreveport facility and provided another urine sample. On Wednesday, July 3, this sample was transported to LabCorp's Mississippi site and tested. About noon that same day, Work Force received the test results from LabCorp, *139 which indicated that Mr. Paul's sample was negative for drugs. Mr. Paul was employed by the Department on July 5, 1996.
One of the benefits of his employment was the opportunity to enroll in a group health insurance plan. Mr. Paul chose coverage under the Louisiana State Employees' Group Benefits Program (the Benefits Program) and completed an enrollment form on July 23, 1996. The plan provided that coverage would become effective on the first day of the month coinciding with or next following the completion of one full calendar month's service by the employee. The enrollment form showed his date of hire was July 5, 1996, and therefore the effective date of coverage, the "actual date of change," shown on the form was September 1, 1996. The plan further stated that if, on that date, the employee were confined to a hospital or nursing home as a result of an accident or injury, the effective date of coverage would be deferred until the employee completed one full day of active employment.
While traveling in Texas on Saturday, August 17, 1996, Mr. Paul was severely injured in a motorcycle accident. He was distracted by a herd of camels in a pasture, strayed off the roadway, and lost control when he tried to bring his motorcycle back onto the highway. He was hospitalized at Wichita General Hospital (Wichita) in Wichita Falls, Texas, and treated there until December 31, 1996, when he was transferred to a nursing home in Minden, Louisiana. Mr. Paul remained in a comatose condition and on July 29, 1997, he was interdicted and his wife was appointed his curatrix. He never returned to active employment with the Department and his major medical health insurance coverage under the Benefits Program never became effective. The parties do not dispute that, had Mr. Paul been employed by the Department on July 1, 1996, and had he worked for a full calendar month after being so employed, his health insurance coverage under the Benefits Program would have been effective August 1, 1996.
On August 18, 1997, Mrs. Paul filed this lawsuit, naming as defendants the Benefits Program, the Department, and LabCorp.[1] The claims against LabCorp were based on its negligence in losing or destroying Mr. Paul's urine sample on June 27, 1996, as a direct result of which he was not employed by July 1, 1996, and therefore was not insured for major medical health insurance benefits at the time of the accident. On October 10, 1997, Wichita intervened in the action, seeking almost $225,000 in unpaid medical expenses incurred by Mr. Paul during his hospitalization. Wichita's claim also alleged the defendants' negligence and breach of contract. Mrs. Paul later supplemented and amended her petition to add Work Force as a defendant.
On May 13, 1998, LabCorp filed a motion for summary judgment, seeking the dismissal of all claims against it.[2] Mrs. Paul and Wichita opposed the motion. After a hearing, the district court granted the motion and ordered the dismissal with prejudice of Mrs. Paul's and Wichita's claims against LabCorp. Finding there was no just reason for delay, the court designated the judgment as a final judgment. See LSA-C.C.P. art. 1915(B).
In written reasons for judgment, the court addressed the two legal theories upon which the claims were based. The court determined that Mr. Paul was not a third-party beneficiary of any agreement between the Department, Work Force, and LabCorp; there was no "stipulation pour autrui" in favor of Mr. Paul. The court also concluded that LabCorp owed no duty to *140 Mr. Paul. But even if LabCorp had a duty to safeguard the urine sample and test it accurately, this duty did not encompass the risk that its negligent handling of a urine sample might result in a lack of health insurance coverage for serious accidental injuries incurred by the person who provided that sample for drug testing. The court stated:
The failure of a sufficient quantity of the sample to arrive for testing and the failure of Paul to have medical coverage on the date of his accident lack an ease of association and are so attenuated that it is not within the scope of protection afforded by the duty owed.
In this appeal, Wichita and Mrs. Paul raise three assignments of error. They claim the district court erred: 1) in finding that LabCorp did not owe a duty to protect Mr. Paul's urine sample from mishandling en route for testing; 2) in further holding that even if such a duty did exist, the breach of that duty does not encompass the risk that Mr. Paul's employment-based insurance coverage would be delayed; and 3) in finding Mr. Paul was not a third-party beneficiary to the contract between LabCorp and the Department and/or Work Force, simply because that contract was not in writing.

SUMMARY JUDGMENT
Appellate courts review summary judgments de novo under the same criteria that govern the trial court's consideration of whether a summary judgment is appropriate. J. Ray McDermott, Inc. v. Morrison, 96-2337 (La.App. 1st Cir.11/7/97), 705 So.2d 195, 202, writs denied, 97-3055 & 97-3062 (La.2/13/98), 709 So.2d 753 & 754. The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of actions. The procedure is favored and shall be construed to accomplish these ends. LSA-C.C.P. art. 966(A)(2). A motion for summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B). The initial burden of proof is on the mover to show that no genuine issue of material fact exists. LSA-C.C.P. art. 966(C)(2). However, once the mover has made a prima facie showing that the motion should be granted, if the non-movant bears the burden of proof at trial on the issue before the court, the burden shifts to him to present evidence demonstrating that material factual issues remain. See LSA-C.C.P. art. 966(C)(2); Hayes v. Autin, 96-287 (La.App. 3rd Cir.12/26/96), 685 So.2d 691, 694, writ denied, 97-0281 (La.3/14/97), 690 So.2d 41.

STIPULATION POUR AUTRUI
The Louisiana Civil Code provides that a contracting party may stipulate a benefit for a third person called a third-party beneficiary. LSA-C.C. art. 1978. Under Louisiana law, such a contract for the benefit of a third party is referred to as a "stipulation pour autrui." See, e.g., Whitney Nat'l Bank v. Howard Weil Fin. Corp., 93-1568 (La.App. 4th Cir.1/27/94), 631 So.2d 1308, 1310. A stipulation pour autrui is never presumed. Rather, the intent of the contracting parties to stipulate a benefit in favor of a third party must be made manifestly clear. Homer Nat'l Bank v. Tri-District Dev. Corp., 534 So.2d 154, 156 (La.App. 3rd Cir.1988), writ denied, 536 So.2d 1236 (La.1989). Additionally, to establish a stipulation pour autrui, the third-party relationship must form the consideration for a condition of the contract, and the benefit may not be merely incidental to the contract. Concept Design, Inc. v. J.J. Krebs & Sons, Inc., 96-1295 (La.App. 4th Cir.3/19/97), 692 So.2d 1203, 1205-06. The party demanding performance of an obligation pursuant to a stipulation pour autrui bears the burden of proving the existence of this obligation. See LSA-C.C. arts. 1831 and 1981.
*141 Mrs. Paul and Wichita argue that Mr. Paul was the third-party beneficiary of a contract between LabCorp and the Department and/or Work Force. They contend the trial court erred in concluding that a stipulation pour autrui must be in writing, and claim all the other requirements for a stipulation pour autrui are met in this case. LabCorp argues that it did not have a contract with the Department, and had only an oral agreement with Work Force to conduct drug screening tests for persons referred to its laboratories by Work Force. LabCorp also contends there was no intention to benefit Mr. Paul as consideration for its contract with Work Force, and any benefit accruing to him as a result of the contract was incidental.
In support of its motion for summary judgment, LabCorp submitted an affidavit from its corporate compliance officer, Denise V. Mays. Based on her personal knowledge of the contractual obligations, procedures, policies, and business records concerning the testing of urine samples from Mr. Paul, she attested that LabCorp had an oral contract with Work Force. She affirmed the basic facts and relevant dates concerning the receipt of Mr. Paul's first specimen, its leakage in transit, the report of that situation, the receipt of the second specimen, and the ultimate report to Work Force that the second specimen was negative for all drugs tested. She also stated:
In collecting the urine samples from George Larry Paul, performing the drug screen testing of the samples, and reporting the results to Work Force Medical Center (sic), LabCorp had no knowledge of Mr. Paul's employment status, whether or not this was "pre-employment" as opposed to "on-the-job" testing, his date of hire or prospective hire by any employer, or any length of service requirements of any medical and health insurance coverage for which (sic) he might later voluntarily choose.
LabCorp had no contracts or agreements of any sort with either the Louisiana Department of Agriculture & Forestry, the Board of Trustees of the Louisiana State Employees' Group Benefit Program, or George Larry Paul for the purpose of conducting pre-employment drug screen tests, had no contact whatsoever with either the LDAF or the Board of Trustees concerning Mr. Paul, and reported no test results to either LDAF, the Board of Trustees, or Mr. Paul.
LabCorp's sole agreement was with Work Force Medical Center (sic) pursuant to an oral contract to collect urine specimens from persons whom Work Force Medical Center (sic) referred to LabCorp, to test the specimens, and to report the test results solely to [Work Force].
In the aforesaid oral agreement with Work Force Medical Center (sic), LabCorp agreed to perform the aforesaid services only for Work Force Medical Center (sic) and did not intend to confer any benefit on Mr. Paul, did not consider any such benefit to him as a consideration of the oral contract between LabCorp and Work Force Medical Center (sic), and did not intend or consider him to be a third party beneficiary of the aforesaid contract.
The burden of proof that a stipulation pour autrui existed in favor of Mr. Paul was on the claimants, Mrs. Paul and Wichita. Once LabCorp submitted evidence sufficient to show that its motion should be granted, the burden shifted to the claimants to present evidence demonstrating that material factual issues remain. There is no evidence to counter the statements of Ms. Mays. Rather, Wichita and Mrs. Paul contend, in effect, that the nature of the contract speaks for itself, arguing in Wichita's brief that:
Here, there is no question but that the contract between LabCorp and Mr. Paul's prospective employer and/or agent clearly was designed to benefit Mr. Paulhe could not be employed, and therefore insured, at the Department *142 of Agriculture until the results of his urinalysis were completedand the primary parties to the contract knew and intended this benefit to Mr. Paul.
They also contend that because Mr. Paul's name was on the chain of custody forms for both urine samples, this showed the intent of the drug test was to benefit him.
Although it is factually correct that Mr. Paul's future employment was dependent on this drug test, we disagree that the contracting parties' intent to benefit him was clear from this evidence. First, Wichita and Mrs. Paul produced no evidence that LabCorp, or even Work Force, knew that Mr. Paul's future employment was conditioned upon the results of this particular test. From LabCorp's perspective, this test could have been the result of random sampling of existing employees, or even the result of some suspicion that an employee was using drugs. LabCorp simply did not know that this test was intended to clear Mr. Paul for future employment with the Department. Second, from the nature of this testing procedure, its results could have been beneficial or detrimental to Mr. Paul. Had the drug screen revealed the presence of certain substances, he could have been denied employment or experienced other negative consequences. Therefore, based on the undisputed facts of this case, we find that the most basic requirement of a stipulation pour autruithat the contract manifest a clear intention to benefit the third party is absent in this case. The trial court did not err in its conclusion on this issue.[3]

LIABILITY FOR NEGLIGENCE
Louisiana Civil Code articles 2315 and 2316 are the codal bases for a claim in tort. Article 2315 states that "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." Article 2316 provides that "[e]very person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill." Porteous v. St. Ann's Cafe & Deli, 97-0837 (La.5/29/98), 713 So.2d 454, 456-57. To determine whether liability exists under the facts of a particular case, the supreme court has adopted a duty-risk analysis. Under this analysis, the plaintiff must prove that the conduct in question was a cause-in-fact of the resulting harm, the defendant owed a duty of care to the plaintiff, the requisite duty was breached by the defendant, and the risk of harm was within the scope of protection afforded by the duty breached. Berry v. State, Through Dep't of Health and Human Resources, 93-2748 (La.5/23/94), 637 So.2d 412, 414; Lavine v. Jackson, 97-2804 (La.App. 1st Cir.12/28/98), 730 So.2d 958, 961, writ denied, 99-0898 (La.5/28/99), 743 So.2d 677, cert. denied, ___ U.S. ___, 120 S.Ct. 417, 145 L.Ed.2d 326 (1999). A negative answer to any of the inquiries of the duty-risk analysis results in a determination of no liability. Mathieu v. Imperial Toy Corp., 94-0952 (La.11/30/94), 646 So.2d 318, 326.
The first determination in the duty-risk analysis is cause-in-fact. Boykin v. Louisiana Transit Co., Inc., 96-1932 (La.3/4/98), 707 So.2d 1225, 1230. A party's conduct is a cause-in-fact of the harm if it was a substantial factor in bringing about the harm. For example, the act is a cause-in-fact in bringing about the injury when the harm would not have occurred without it. While a party's conduct does not have to be the sole cause of the harm, it is a necessary antecedent essential to an assessment of liability. Netecke v. State ex rel. DOTD, 98-1182 & 98-1197 (La.10/19/99), 747 So.2d 489, 498. Cause-in-fact is a factual question to be determined by the fact finder and, thus, is subject to the manifest error standard of review. See Hardenstein v. Cook Constr., Inc., 96-0829 (La.App. 1st Cir.2/14/97), 691 *143 So.2d 177, 183, writ denied, 97-0686 (La.4/25/97), 692 So.2d 1093.
Duty is a question of law. Simply put, the inquiry is whether the plaintiff has any lawstatutory, jurisprudential, or arising from general principles of faultto support his claim. Faucheaux v. Terrebonne Consol., Gov't, 615 So.2d 289, 292 (La.1993); Clark v. Dep't of Pub. Safety and Corrections, 96-2737 (La.App. 1st Cir.2/20/98), 716 So.2d 1, 3, writ denied, 98-1201 (La.6/19/98), 720 So.2d 1216.
Whereas the question of cause-in-fact involves a factual determination, the determination of legal cause involves a purely legal question. Todd v. State, Dep't of Social Services, Office of Community Services, 96-3090 (La.9/9/97), 699 So.2d 35, 39. The legal cause or scope-of-duty inquiry is fact sensitive and ultimately turns on a question of policy as to whether the particular risk falls within the scope of the duty. Roberts v. Benoit, 605 So.2d 1032, 1044 (La.1991). A risk of a particular injury may be found not within the scope of a duty where the circumstances of that injury to that plaintiff could not be reasonably foreseen or anticipated, because there was no ease of association between the risk of that injury and the legal duty. See Hill v. Lundin & Assoc., Inc., 260 La. 542, 256 So.2d 620 (1972). Whether phrased in terms of scope of duty or legal cause or proximate cause, it can be useful to consider whether "too much else has intervenedtime, space, people, and bizarreness." See Roberts, 605 So.2d at 1058 (quoting David W. Robertson, Reason Versus Rule in Louisiana Tort Law: Dialogues on Hill v. Lundin & Associates, Inc., 34 La.L.Rev. 1 (1973)).[4]
Based on our examination of the facts in this case, we must agree with the trial court that, even if we assume that LabCorp breached a duty owed to Mr. Paul to collect, transport, and analyze his urine sample accurately, efficiently, quickly, and without mishap of any kind, the combination of circumstances resulting in Mr. Paul's injuries and his lack of insurance coverage are simply too attenuated to be included within the scope of any such duty. LabCorp did not even know Mr. Paul's employment was dependent upon the results of the drug test. It certainly could not have foreseen that a delay of a few days in this test would result in a delay of over thirty days in his health insurance coverage. And no one could have foreseen that the uninsured Mr. Paul would take a motorcycle trip, be distracted by a herd of camels, and be seriously injured. Simply stated, the facts of this case illustrate that the risk of this occurrence cannot even be remotely associated with whatever risks might be expected or foreseen as the result of any negligent transportation or handling of a urine sample submitted for drug testing. The "bizarreness" factor, if nothing else, operates to put Mr. Paul's injuries beyond the scope of any duty that might have been owed to him by LabCorp when it accepted the responsibility to collect, transport, analyze, and report on his urine sample. Mr. Paul's injuries were the result of his momentary inattention while driving a motorcycle, not the result of LabCorp's allegedly negligent handling of his urine sample. His uninsured status was also within his controla condition of which LabCorp had no knowledge and over which it had no control. Knowing there would be a gap in coverage, Mr. Paul had the choice of purchasing interim coverage or taking the risk of remaining uninsured until his employment-related policy became effective.
We sympathize with Mrs. Paul and Wichitaboth have suffered serious losses as a result of Mr. Paul's accident. However, we cannot impose the costs of those losses on an entity whose duty simply did *144 not encompass the risk of the tragedy that befell Mr. Paul. The trial court's judgment on this issue is correct.

DECREE
We affirm the judgment of the trial court granting summary judgment in favor of LabCorp and dismissing with prejudice all claims against it. All costs of this appeal are assessed against Mrs. Paul and Wichita.
AFFIRMED.
NOTES
[1] The petition named Roche Biomedical Laboratories, Inc. and LabCorp. However, Roche had merged with National Health Laboratory Holdings in April 1995 and LabCorp was the surviving corporation.
[2] All claims against the Department had already been dismissed when its motion for summary judgment was granted on March 31, 1998.
[3] Because we find this basic requirement of a "stipulation pour autrui" was not present in this instance, we do not address Wichita's and Mrs. Paul's otherwise convincing argument challenging the jurisprudential dicta that such a contract must be in writing.
[4] For an exhaustive discussion of the legal principles involved in the duty-risk analysis, see this court's recent case, Perkins v. Entergy Corp., 98-2081, 98-2082, 98-2083 (La.App. 1st Cir.12/28/99), 756 So.2d 388.