849 So.2d 622 (2003)
James W. BOWMAN, Sr., and Dorothy Bowman, Individually and on Behalf of Their Deceased Son, Shane Lee Bowman
v.
The CITY OF BATON ROUGE/PARISH OF EAST BATON ROUGE, the Department of Emergency Medical Services of the City of Baton Rouge/Parish of East Baton Rouge and "ABC" Insurance Company.
No. 2002 CA 1376.
Court of Appeal of Louisiana, First Circuit.
May 9, 2003.
*624 Frederick A. Stolzle, Jr., Baton Rouge, Counsel for Plaintiffs/Appellants James W. Bowman, Sr., et al.
Henry D.H. Olinde, Jr., and James E. Moore, Jr., Baton Rouge, Counsel for Defendant/Appellee City of Baton Rouge/Parish of East Baton Rouge, Through the Department of Emergency Medical Services.
Before: PARRO, MCDONALD, and CLAIBORNE,[1] JJ.
MCDONALD, J.
This is an appeal by plaintiffs from a summary judgment rendered in favor of the City of Baton Rouge/Parish of East Baton Rouge, through the Department of Emergency Medical Services (hereinafter EMS). For the following reasons, we affirm the summary judgment.

FACTS AND PROCEDURAL HISTORY
On May 30, 2001, at 12:21 a.m., Debbie Matherne, an EMS Communications Officer/Dispatcher, received a 911 call from an adult male. A transcribed audiotape of the call shows that the caller indicated:
Caller: Uh, I have a friend of mine that's sick and he's telling me to help him and he, he says he can't hear and he just told me heart attack.
Ms. Matherne immediately obtained the relevant address and determined that the caller's friend, Shane Lee Bowman, was twenty-seven years old. When she attempted to get more specific directions to the caller's location, he interrupted and the following exchange took place:
Caller: Yeah, well, uh, hold on just a second ma'am, I don't even think this going to be an emergency. He's passed out now. He's ...
911: Is he drunk, or?
Caller: No. Not that I know of.
911: Okay. He's passed out now?
Caller: Well, I just walked in the door and I heard something. I came into his room and he looked at me and he's just started moaning and then he said "help me" and I was like "What do you want," he was like "I can't hear you."
911: Okay. Is he able to respond to you right now?

*625 Caller: He's asleep now.
911: Can you try to wake him. See if he's okay.
Caller: Hold on. Shane? Okay, never mind. He said don't worry about it. I'm sorry.
911: Okay. That's alright sir, thank you.
Caller: Thank you.
911: Bye bye.[2]
Ms. Matherne had readied a unit to respond when the call was initiated. However, based on the assurance that there was no emergency, she cancelled the unit.
Later that same day, at 12:35 p.m., Darren Hymel called 911 from the same location. He reported that he believed his roommate, Shane Lee Bowman, was dead. He also reported having heard him moving around at about 1:00 a.m. that morning, return to bed, and snore. Bowman had, in fact, passed away. The coroner's death certificate placed the time of death at approximately 3:00 a.m. on May 30, 2001, and listed the cause as pulmonary and cerebral edema.
The parents of Shane Lee Bowman filed suit against EMS and their unidentified insurer, seeking wrongful death and survival damages for the death of their son.[3] They alleged that Shane Lee Bowman's death was caused by the negligent failure of EMS to provide timely emergency services in response to a call for assistance.
EMS filed a motion for summary judgment, averring that, based on the information communicated to the EMS dispatcher, no duty arose to send an emergency vehicle to the decedent's address. The trial judge granted the motion and dismissed plaintiffs' claims with prejudice. In his oral reasons for judgment, the trial judge observed:
I did let you play the tape in court this morning to see if there was something on the tape that might convince me to change my mind, and I haven't heard anything.
I believe the dispatcher was talking to and [sic] adult when she received the call. It would have been something different if she was talking to a child and maybe she could have said, well, this child might not be able to know what the condition of the person is, but she was talking to an adult. I gather that she was talking to the man's roommate. She heard the man talk and the last thing she heard was, he's okay, never mind. So what you are suggesting is that when the dispatcher hears that, the dispatcher is still supposed to send an ambulance or the police or something else when they have been assured that the reason for the call has been alleviated. The information that this lady received was, "He's all right; that's okay."
I'm going to grant the motion for summary judgment. Under the circumstances that's the way I see it.
A written judgment dismissing plaintiffs' claims against EMS with prejudice and at plaintiffs' cost was rendered. The plaintiffs appeal the adverse decision of the trial judge, assigning two errors for our review, which we paraphrase as follows:
1. The trial court improperly granted summary judgment because the issue *626 of fault on the part of the EMS dispatcher was a question of negligence not appropriate for resolution by summary judgment.
2. The trial court erred in rendering judgment on the motion for summary judgment when plaintiff had an outstanding motion to compel with respect to an unanswered discovery request.

STANDARD OF REVIEW
In determining whether summary judgment is appropriate, appellate courts conduct a de novo review of the evidence, employing the same criteria that govern the district court's determination of whether summary judgment is appropriate. Sanders v. Ashland Oil, Inc., 96-1751 (La. App. 1st Cir.6/20/97), 696 So.2d 1031, 1035, writ denied, 97-1911 (La.10/31/97), 703 So.2d 29. Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law. La. C.C.P. art. 966 B.
A motion for summary judgment is a procedural device used to avoid a full-scale trial where there is no genuine factual dispute. Zeringue v. Karl Ott Poles & Pilings, 00-0522 (La.App. 1st Cir.5/11/01), 808 So.2d 628, 630. Summary judgments are favored. La. C.C.P. art. 966 A(2). The initial burden of proof remains with the mover to show that no genuine issue of material fact exists. However, on issues for which the moving party will not bear the burden of proof at trial, the moving party's burden of proof on the motion is satisfied by pointing out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, the nonmoving party must produce factual support sufficient to establish that it will be able to satisfy its evidentiary burden of proof at trial; failure to do so shows that there is no genuine issue of material fact. LSA-C.C.P. art. 966(C)(2); Clark v. Favalora, 98-1802 (La.App. 1st Cir.9/24/99), 745 So.2d 666, 673; Dreisel v. Metropolitan Property and Cas. Ins. Co., 01-2705 (La.App. 1st Cir.12/20/02), 836 So.2d 347, 349, writ denied, 03-0199 (La.3/28/03), 840 So.2d 575.
EMS would not bear the burden of proof at trial; therefore, its burden on the motion for summary judgment did not require that it negate all essential elements of plaintiffs' claim. Rather, its burden on the motion for summary judgment is to point out to the court that there is an absence of support for one or more elements essential to plaintiffs' claims. La. C.C.P. art. 966 C(2); Babin v. Winn-Dixie Louisiana, Inc., 00-0078 (La.6/30/00), 764 So.2d 37, 39.

APPLICABLE LAW
Plaintiffs' claims in this case are based upon the alleged negligence of the EMS dispatcher, Ms. Matherne. Negligence claims under La. C.C. art. 2315 are examined using a duty/risk analysis. The duty/risk analysis is a set of five separate elements that takes into account the conduct of each party and the peculiar circumstances of each case. The plaintiffs bear the burden of proving each of the following elements: (1) the defendant's conduct was a cause-in-fact of the plaintiffs' injuries, (2) the defendants had a duty to conform their conduct to a specific standard, (3) the defendants breached that duty to conform their conduct to a specific standard, (4) the defendant's conduct was the legal cause of the plaintiffs' injuries, and (5) actual damages. A negative answer to any of the elements of the duty/risk analysis prompts a no-liability determination. Joseph v. *627 Dickerson, 99-1046, 99-1188 (La.1/19/00), 754 So.2d 912, 916.
Generally, there is an almost universal legal duty on the part of a defendant in a negligence case to conform to the standard of conduct of a reasonable person in like circumstances. Whether a legal duty exists, and the extent of that duty, depends on the facts and circumstances of the case, and the relationship of the parties. Joseph, 754 So.2d at 916. Duty is a question of law. Simply put, the inquiry is whether the plaintiff has any lawstatutory, jurisprudential, or arising from general principles of faultto support his claim. Paul v. Louisiana State Employees' Group Benefit Program, 99-0897 (La.App. 1st Cir.5/12/00), 762 So.2d 136, 143.
The determination of legal cause involves a purely legal question. The legal cause or scope-of-duty inquiry ultimately turns on a question of policy as to whether the particular risk falls within the scope of the duty. See Roberts v. Benoit, 605 So.2d 1032, 1044 (La.1991); Paul, 762 So.2d at 143. A risk of a particular injury may be found not within the scope of a duty where the circumstances of that injury to that plaintiff could not be reasonably foreseen or anticipated, because there was no ease of association between the risk of that injury and the legal duty. Paul, 762 So.2d at 143. Although the determination of whether to assign a legal duty is fact specific, the issue of whether there is a duty is ultimately a question of law. Myers v. Dronet, 01-5 (La.App. 3rd Cir.6/22/01), 801 So.2d 1097, 1109.

ASSIGNMENT OF ERROR NO. 1
Plaintiffs contend the trial judge erred in granting summary judgment because the issue before the court was one of negligence that was not appropriate for resolution by summary judgment. We disagree and note that the cases cited by the plaintiff in support of that contention were decided prior to the 1996 amendment to La. C.C.P. art. 966.
EMS filed a motion for summary judgment calling into question whether, under the undisputed facts and circumstances of this case, any duty was owed to send an emergency vehicle to attend to Shane Lee Bowman in response to the call made by his roommate at 12:21 a.m. on May 30, 2001. As previously noted, the existence of a legal duty is a legal question. Bradford v. Kaster, 98-0758, 98-1051 (La.App. 1st Cir.5/14/99), 732 So.2d 827, 830, writ denied, 99-1612 (La.9/17/99), 747 So.2d 567. Summary judgment is appropriate where no legal duty exists. Bradford, 732 So.2d at 830. Summary judgment is appropriate when all relevant facts are brought before the court, the relevant facts are undisputed, and the sole issue remaining is the conclusion to be drawn from the relevant facts. Terrebonne v. Floyd, 99-1036 (La.App. 1st Cir.5/23/00), 767 So.2d 754, 757.
Although plaintiffs make an effort in their appellate brief to suggest that outstanding disputed issues of fact preclude summary judgment, there is no dispute as to the content of the 911 call to Ms. Matherne. Both parties have submitted the same transcript of the call for consideration, and there is no disagreement as to the accuracy of the transcript. The only basis for the alleged liability of EMS is the allegation that it breached a duty owed to Shane Lee Bowman by virtue of Ms. Matherne's conduct in connection with that call. That being the case, it is appropriate to determine, in the context of a motion for summary judgment, the threshold question of whether any duty was owed by EMS based on the 911 call at issue and, if so, the scope of that duty.
*628 In support of its motion for summary judgment, EMS submitted the affidavit of Ms. Matherne attesting that she received the call in question. Ms. Matherne indicated that before she could collect much information, the caller advised that there was no emergency after all. She instructed the caller to awaken his friend to see if he was all right. She heard him do so, and the caller related that his friend indicated that he was okay. EMS also submitted the affidavit of Ralph Ladnier, Communications District Manager for the EMS-EBR Communications District. Ladnier attested that a true and correct copy of the 911 call in question was kept in the ordinary course of business and that the "actions of the dispatcher were in accordance with proper dispatch policy and procedure." A transcript of the 911 call made to Ms. Matherne was submitted in support of the motion.
In opposition to the motion for summary judgment, counsel for plaintiffs filed the same transcript of the 911 call submitted by EMS. In addition, he filed the affidavit of Fred Hurtado, purported to be an expert in the field of emergency medical services and emergency medical dispatch systems. Hurtado opined that given the information conveyed, Ms. Matherne had a duty to ascertain the chief complaint and to verify the status of consciousness and breathing of Shane Lee Bowman. Hurtado made the conclusory allegation that Ms. Matherne breached a national standard of care but did not mention a violation of a local standard of care. He referred to the EMS Communications Division Standard Operating Procedure Manual, which had been produced by EMS in response to discovery, but he did not opine that Ms. Matherne violated any of the guidelines outlined therein.
The plaintiffs argued in their opposition to the EMS motion that Ms. Matherne violated Sections 608.4 and 616.02 of the EMS Standard Operating Procedures by not doing a complete interrogation of the 911 caller to determine the breathing and consciousness status of Shane Lee Bowman. However, it is clear from an examination of the relevant excerpts that the procedures cited contemplate a situation where an emergency vehicle is being dispatched and the dispatcher is trying to obtain specific information to give to the emergency medical technicians being dispatched. The procedures cited do not suggest that a dispatcher must continue to gather this information in a situation where the 911 caller interrupts the process and advises that the call was a mistake and there is no emergency after all.
Plaintiffs additionally filed the affidavit of Dr. Jeff J. Clawson, who also purported to be an expert in Medical Dispatch Systems.[4] He likewise opined that the dispatcher failed to follow the proper protocols and ask the appropriate questions. He did not address the standard of care owed by a dispatcher in this area. Finally, plaintiffs submitted an excerpt from the deposition of Connie Cashio, described by counsel as a supervisor of the Emergency Medical Services Communications Center in Baton Rouge. In the excerpt submitted, Ms. Cashio indicated that if at any point in question a caller indicated that he did not need assistance after all, she would ask a follow-up question inquiring whether the caller was sure that an ambulance was not needed.
*629 First, we note that we are not bound by the conclusory opinions of experts on the legal question of whether a duty existed under the facts and circumstances of this case. The plaintiffs do not direct our attention to any statutory law regulating the conduct of EMS dispatchers. Nor are we directed to any jurisprudence establishing the precise duty owed by dispatchers.[5] The standard operating procedures produced by EMS during discovery set forth a list of things for a dispatcher to establish when dealing with a 911 call. The list includes determining the location and age of the person needing help and ascertaining the breathing and consciousness level of that person so that information can be communicated to technicians sent to the emergency location. Ms. Matherne commenced to obtain all of this information. However, the 911 caller interrupted the process by advising that no assistance was needed. It is true that Ms. Matherne did not ask specific questions concerning Bowman's level of consciousness and breathing. However, since the caller reported that he spoke to Bowman and that Bowman told him he was all right, it was certainly clear that Shane Lee Bowman was conscious and breathing at that time.
The situation faced by the dispatcher in this case varied from the norm. The precise issue before us is whether, after beginning to gather information, Ms. Matherne owed any further duty to establish Shane Lee Bowman's breathing and consciousness level after the caller indicated that everything was all right and after Shane Lee Bowman himself indicated that he was okay and there was no emergency. In our view, when an adult caller who initially reports an emergency advises a dispatcher that everything is all right, when the person purportedly in need of assistance personally indicates that he is okay, and when there is no reason to doubt that information, the dispatcher has no duty to continue to interrogate the caller or to send an emergency vehicle to the location. Under the particular facts and circumstances of this case, we believe that EMS fulfilled its initial duty and that it had no further duty toward Shane Lee Bowman after he and the caller indicated that there was no emergency. The dispatcher acted reasonably under the circumstances presented.
There was nothing additional to be gained by a trial on the merits. All of the evidence necessary to a resolution of the question of duty was before the court. Accordingly, we find no merit to this assignment of error.

ASSIGNMENT OF ERROR NO. 2
The plaintiffs also contend that the granting of summary judgment in this case was inappropriate because there was outstanding discovery and an outstanding motion to compel further discovery. The plaintiffs filed a motion to continue the hearing date on the grounds that discovery was still ongoing, arguing that defendant's motion was premature. EMS opposed the motion, pointing out that all the evidence relevant to its motion for summary judgment was before the court in the form of the transcript of the 911 call, the accuracy of which was not disputed. The motion for a continuance was denied on March 13, 2002. Plaintiffs did not apply to this court *630 for supervisory relief.[6]
Thereafter, on March 19, 2002, plaintiffs filed a motion to compel further discovery. The only item specifically identified as not having been produced was a certified copy of the policy insuring EMS. Plaintiffs did not detail in what way the further discovery sought could impact a determination of whether EMS owed a duty to Shane Lee Bowman to provide emergency services under the particular facts and circumstances of this case.
We agree that a motion for summary judgment should be granted only after adequate discovery. See La. C.C.P. art. 966 C(1). However, the mere contention by an opponent to a motion for summary judgment that he does not have the information necessary to defend against the motion because of the movant's failure to comply with discovery is insufficient to defeat the motion. Crocker v. Levy, 615 So.2d 918, 920 (La.App. 1st Cir.1993). If the EMS motion for summary judgment had not been based on a question of law, discovery might have been relevant to establish a material disputed fact. However, since the motion questioned whether any duty could be found in this case based on the information conveyed in the 911 call, we do not believe that any further discovery would have been of assistance in deciding the issue presented. The additional discovery sought by the plaintiffs would not have impacted our determination that no duty existed under the particular facts and circumstances of this case. This assignment of error has no merit.

CONCLUSION
For the reasons set forth above, we affirm the judgment of the trial court granting summary judgment in favor of EMS. Costs of this appeal are assessed against plaintiffs.
AFFIRMED.
NOTES
[1] Judge Ian W. Claiborne, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] Both parties filed the same transcript for the trial court's consideration. In addition, the trial judge indicated in his oral reasons for judgment that he listened to the audiotape. No argument concerning the accuracy of the transcription is made.
[3] An answer was filed by the City/Parish representing that the Department of Emergency Medical Services is not a separate juridical entity and, therefore, not a proper party defendant. An amended and supplemental answer was subsequently filed pleading immunity pursuant to La. R.S. 40:1233 and 37:1732.
[4] The affidavit was attached to plaintiffs' supplemental memorandum in opposition to the EMS motion. We note that little information was submitted to establish the expertise of either of the plaintiffs' expert affiants. However, EMS neither moved to strike nor otherwise contested the credentials of the affiants.
[5] The plaintiffs cite Ambrose v. New Orleans Police Department Ambulance Service, 627 So.2d 233 (La.App. 4th Cir.1993), reversed, 93-3099, 93-3110, 93-3112 (La.7/5/94), 639 So.2d 216. However, that case does not address the standard of care or duties owed by a 911 dispatcher.
[6] Plaintiffs' petition was filed in August 2001. Interrogatories and a request for production of documents were filed at the same time. The defendant's responses were forwarded to plaintiffs in November 2001. The EMS motion for summary judgment was filed January 28, 2002, and was set for hearing on March 25, 2002. On March 1, plaintiffs propounded additional interrogatories and discovery requests, which requests exceeded the number allowed by the local rules. On March 7, 2002, plaintiffs noticed the depositions of various records custodians for March 20, 2002. Also on March 7, 2002, plaintiffs moved for a continuance of the hearing on the motion for summary judgment. Attached to the motion for continuance were additional notices for the March 20, 2002 depositions of Ralph Ladnier and Connie Cashio, the May 21, 2002 depositions of Darren Hymel and Grant Kay, and the May 22, 2002 depositions of Debra Matherne and others. The defendants took the position that the flurry of discovery activity in March 2002 was a transparent attempt to disguise the fact that there were no relevant issues of disputed fact concerning the issue raised by EMS.