FRANCES GOURGUES ON BEHALF OF HER MINOR CHILD, TIFFANY GOURGUES,
v.
BRANDON PATE, LAURA PATE AND ALLSTATE INSURANCE COMPANY.
No. 2009 CA 1107.
Court of Appeals of Louisiana, First Circuit.
February 10, 2010.
Not Designated for Publication
KRIS A. PERRET, Attorney for Plaintiff-Appellee, Tiffany Gourgues.
C. SHANNON HARDY, Penny & Hardy, Attorney for Defendants-Appellants, Brandon Pate, Laura Pate, and Allstate Insurance Company.
Before: PARRO, KUHN, and McDONALD, JJ.
PARRO, J.
Brandon Pate, Laura Pate, and Allstate Insurance Company (the defendants) appeal an award of damages to Tiffany Gourgues for injuries she suffered in an automobile accident. Finding no manifest error in the judgment of the trial court, we affirm.

BACKGROUND
On the night of February 21, 2003, eighteen-year-old Brandon was driving his mother Laura's car, which was insured by Allstate. Tiffany, fourteen years old at the time,[1] was the front-seat passenger; there were also two other teenage passengers. Brandon was traveling westbound on Louisiana Highway 75 and drove into Grand Bayou after failing to stop at a "T" intersection. Tiffany and all the other occupants of the vehicle had to swim out of the car. In her suit against the defendants, Tiffany claimed the accident caused injuries to her wrist, head, neck, and shoulders, as well as psychological problems. After a bench trial, the court awarded Tiffany $20,000 in general damages and $5,404.30 in medical expenses for injuries it found were causally related to the accident. This appeal followed.
The defendants contend that the evidence shows that most of the injuries Tiffany suffered were totally unrelated to the automobile accident. Therefore, they claim it was manifest error for the trial court to conclude that Tiffany met her burden of proof with respect to her medical injuries, expenses, and damages. Specifically, they are challenging medical causation in this case.

APPLICABLE LAW
Cause-in-fact is a factual question to be determined by the fact finder and, thus, is subject to the manifest error standard of review. Paul v. Louisiana State Employees' Group Ben. Program, 99-0897 (La. App. 1st Cir. 5/12/00), 762 So.2d 136, 142-43. The two-part test for the appellate review of a trial court's factual finding is: 1) whether there is a reasonable factual basis in the record for the finding of the trier of fact; and 2) whether the record further establishes that the finding is not manifestly erroneous. Mart v. Hill, 505 So.2d 1120,1127 (La. 1987). Thus, if there is no reasonable factual basis in the record for the trier of fact's finding, no additional inquiry is necessary to conclude there was manifest error. However, if a reasonable factual basis exists, an appellate court may set aside a factual finding only if, after reviewing the record in its entirety, it determines the factual finding was clearly wrong. See Stobart v. State, through Dep't of Transp. and Dev., 617 So.2d 880, 882 (La. 1993); Moss v. State, 07-1686 (La. App. 1st Cir. 8/8/08), 993 So.2d 687, 693, writ denied, 08-2166 (La. 11/14/08), 996 So.2d 1092. When findings are based on determinations regarding the credibility of witnesses, the manifest error/clearly wrong standard demands great deference to the trier of fact, for only the fact finder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Rosell v. ESCO, 549 So.2d 840, 844 (La. 1989). Reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review. Lockett v. State. Dept. of Transp. and Dev., 03-1767 (La. 2/25/04), 869 So.2d 87, 95.

ANALYSIS
The evidence consisted of testimony from the investigating officer and Tiffany, along with copies of her medical records. The investigating officer testified that none of the occupants of the vehicle complained of injuries at the accident scene.
However, the day after the accident, Tiffany was examined at River West Medical Center for an injured wrist, which was diagnosed as a sprain. She was advised to wear an Ace bandage and to take Motrin for pain. The emergency room records from this visit do not reflect any other complaints.
In March 2003, she began counseling with Luis O. Campos, LCSW, for mood swings, episodes of anxiety, panic-like behavior during car rides, and nightmares that had begun after the accident. He diagnosed her with post-traumatic stress disorder caused by the accident, and referred her to a physician who prescribed an anti-depressant. Her symptoms abated somewhat when she took the anti-depressant. She continued counseling sessions with Campos until October 2003.
Although she was treated during the ten months following the accident for various unrelated illnesses by Dr. Michael Quinn, her pediatrician, and for adjustments to her braces by Dr. John Harbour, her orthodontist, their records show that she did not complain to either of them about accident-related problems during that period. Dr. Harbour's notes from September 2004 indicate that she reported headaches and TMJ symptoms in her neck and jaw, all of which had existed "since wreck" 18-24 months earlier. He referred her to Dr. Glenn Kidder for further evaluation and treatment.
In January 2004, she began seeing Dr. William Cherry at Metropolitan Health Center, complaining that after the accident, she had headaches, neck pain, and back pain. His examination showed some muscle spasm in the neck, some tenderness in the thoracic region, and mild bilateral muscle spasm in the lumbar region. He did x-rays of her neck, back, and shoulders, and a CT scan of her head. Dr. Cherry provided medications and physical therapy over the course of ten months for her back and neck problems, and noted in July that both of her temporomandibular joints showed some possible tenderness to the left with popping and clicking. He recommended she confer with her orthodontist concerning these TMJ symptoms, and in October 2004, Dr. Cherry released her to the care of Dr. Harbour for treatment of TMJ.
Dr. Glenn Kidder, who specializes in treatment of this disorder, examined her on March 15, 2005, at which time Tiffany was complaining of bilateral jaw joint and facial pain, exhaustion, jaw fatigue when eating, headaches and neck aches, and clenching and grinding of her teeth. His notes reflect that the onset of these problems was the accident in February 2003, noting that "mother said the left side of her head and face and under left eye were bruised." He further noted that she experienced some of the jaw symptoms within a month after the accident, and that they became worse over time, eventually resulting in Dr. Cherry's referral to Dr. Harbour, who referred her to him. Dr. Kidder's examination confirmed that she had TMJ; he treated her by filing down the points of some of her teeth, referring her to physical therapy, and providing her with a mouth splint to be worn every night. His records show treatments continued until October 2005.
Tiffany testified that she hit her head and face in the accident and also suffered pain in her wrist and body aches all over. She wore a wrist brace for about a week and, although she said she was supposed to wear it longer, she took it off so she could play softball. Although she taped her wrist for practices and games, it continued to be problematic whenever she played. Tiffany also said that several weeks after the accident, she began seeing a psychotherapist, Luis Campos, who counseled her for anxiety and nightmares caused by the accident. She testified that the emotional effects of the accident continued for six months to a year before they abated. About ten months after the accident, at the recommendation of her attorney, she finally went to see Dr. Cherry for continuing physical problems. Dr. Cherry gave her muscle relaxers and pain killers, but eventually her orthodontist referred her to Dr. Kidder for further treatment of possible TMJ. Dr. Kidder gave her a splint to wear at night and also sent her to a physical therapist for treatments. Her jaw pain did not resolve one hundred percent, but it was considerably better after Dr. Kidder's treatments.
Tiffany explained that she did not report her jaw pain, body aches, and headaches to her pediatrician. Dr. Quinn, because she thought these problems would eventually go away and because she went to him for other specific illnesses not related to the accident. She also thought the jaw pain might be a natural result of her braces, so did not report it to Dr. Harbour, whom she saw only very briefly at each visit to his office. Tiffany also stated that her mother was very angry with her and Brandon because of the wreck, and also because of their age difference and the fact that they had been drinking before the accident occurred. Therefore, Tiffany avoided bringing up the accident and her residual symptoms. She said, "it was a fight, and it was just a big issue that I didn't wanna have to bring up." Her mother's presence during her visits with Dr. Quinn was another reason why she did not talk to him about any of her continuing pain. Regarding the record of her emergency room visit, Tiffany testified on cross examination that she told the nurse that she hit her face and bumped her head, but "they weren't concerned about it." She could not explain why the hospital records did not reflect the head and face injury, and said her mouth and jaw continued to hurt. Tiffany said that after ten months, she told her mother that her jaw was still hurting, which was when her mother decided to discuss the case with a lawyer; the attorney sent her to Metropolitan Health Center.
In oral reasons for judgment, the court stated:
The medical records, they are what they are, and there was some concern of this Court, as it was [for] the Defendant-Counsel for Defendants as to why it took her so long, and I think I have an appreciation of it. Some things kids don't want to bring up. They don't wanna tell at all. She got caught because of the accident, and she explained how it brought back bad memories between [her] and her mother for sure. ... [A]nd when she realized it wasn't going away, she obviously confided in her mother, who saw an attorney, who saw some doctors.
Clearly, the court believed Tiffany's testimony that she had injuries to her face, neck, and back as a result of the accident, and that these continued until she was treated by Dr. Cherry for her back and neck problems and by Dr. Kidder for TMJ. The court also accepted Tiffany's explanations as to why she had not discussed her aches and pains with doctors who were treating her for other things in the ten months following the accident.
After carefully reviewing the record, we find there is evidence supporting the trial court's finding that Tiffany's medical problems were caused by the accident. Although the defendants argue strenuously that the gap in time before she reported these problems and the omissions from the records of other treatment providers establish that most of these problems were not caused by the accident, we do not find that these factors show that the trial court's factual finding of causation was clearly wrong. There is no evidence in the record to suggest there was some other cause of these problems. Moreover, the court's factual finding was based on Tiffany's credibility as a witness, which the trial judge was in a better position to evaluate than is this court, since he could observe her demeanor during her testimony, and this court cannot. Therefore, based on the entirety of the evidence, we find no manifest error in the court's judgment.
Since we conclude that Tiffany met her burden of proof that the accident caused more than just a wrist injury, we find no abuse of discretion in the trial court's award of medical expenses and general damages. The only medical expenses claimed were for the emergency room treatment following the accident, one session with Luis Campos, and the diagnostic tests and treatments for headaches, neck and back pain, and TMJ that Tiffany received from Dr. Cherry and Dr. Kidder. Those totaled $5,404.30, which was the amount awarded. Moreover, given the duration of her problems, particularly the TMJ, we do not find the general damage award of $20,000 was excessive.

CONCLUSION
Based on the foregoing, we affirm the judgment and assess all costs of this appeal to Brandon Pate, Laura Pate, and Allstate Insurance Company.
AFFIRMED.
NOTES
[1] After reaching the age of majority, Tiffany was substituted as a proper party plaintiff in this lawsuit that her mother had initiated on her behalf.