819 So.2d 1088 (2002)
SILLIMAN PRIVATE SCHOOL CORPORATION
v.
SHAREHOLDER GROUP.
No. 2001 CA 0964.
Court of Appeal of Louisiana, First Circuit.
May 10, 2002.
*1089 Robert O. Butler, Jr., St. Francisville, Bob D. Tucker, Baton Rouge, Counsel for Plaintiff/Appellee, Silliman Private School Corporation.
Charles E. Griffin, II, St. Francisville, Counsel for Defendant/Appellant, Shareholder Group.
Before: WHIPPLE, FOGG, and GUIDRY, JJ.
WHIPPLE, Judge.
The appellants herein, a group of Silliman Private School Corporation shareholders, collectively referred to as the "Shareholder Group," appeal a judgment of the trial court upholding the validity of the issuance of certain shares of stock of Silliman Private School Corporation and denying the Shareholder Group's request for a permanent injunction, attorney's fees and costs. Finding no error by the trial court, we affirm.

FACTS AND PROCEDURAL HISTORY[1]
This action was initially instituted on August 13, 1999, by Silliman Private School Corporation ("Silliman Corporation"), a non-profit Louisiana Corporation incorporated in 1965, which owns the physical facilities in East Feliciana Parish operated as the private school, "Silliman Institute." Silliman Corporation brought suit against a group of shareholders referred to as the "Shareholder Group," contending that the Shareholder Group was improperly attempting to call a "special meeting" of select shareholders only, scheduled for August 16, 1999. Silliman Corporation further contended that the purported notice of the special meeting was improper and ineffective for the call of a special meeting of shareholders of the corporation. Accordingly, Silliman Corporation sought an order restraining the Shareholder Group *1090 from: (1) designating the scheduled meeting as a special meeting of the shareholders of Silliman Corporation; (2) asserting that any action taken at the scheduled meeting was in any way the act or deed of Silliman Corporation; and (3) taking any action at the scheduled meeting, or in reliance on decisions by the participants of the meeting, that may bind or obligate Silliman Corporation or alter or affect Silliman Corporation in any way. Silliman Corporation also sought preliminary and permanent injunctions.
On the same date the petition was filed, the trial court issued a temporary restraining order, prohibiting the board of directors or any shareholder group from conducting any official business on behalf of the corporation or Silliman Institute on any date or from taking any action purporting "to affect the present status quo of the school, staff or policy or which would alter or affect the Silliman Corporation in any way, or the stock of said corporation." The trial court ordered that the TRO remain in effect until a hearing on the matter could be conducted on September 13, 1999.
Thereafter, on August 27, 1999, a group of shareholders, purportedly "including but not limited to" those previously designated as the Shareholder Group (collectively referred to in this opinion as the "Shareholder Group") filed a pleading in the pending proceedings entitled "Petition," naming Silliman Corporation as defendant. Through its petition (actually, a reconventional demand), the Shareholder Group sought a preliminary injunction and declaratory judgment. Specifically, the Shareholder Group contended that 1,000 shares of stock issued in January of 1986 were invalid due to certain purported irregularities and that, consequently, those shares could not be validly voted. Accordingly, the Shareholder Group sought a preliminary injunction, enjoining the board of directors or any shareholders deriving an interest from the allegedly invalid shares from acting on those shares until a determination as to their validity could be made by the trial court. The Shareholder Group's request for a preliminary injunction was also set for hearing on September 13, 1999.
At the scheduled hearing, the parties submitted joint stipulations of fact and presented argument to the court. Following the hearing, the trial court rendered written reasons for judgment, finding that the Shareholder Group had failed to meet its burden of establishing the alleged irregularities; that the actions of the board with regard to notice of the January 1986 meeting wherein the additional 1,000 shares were issued had been ratified by the shareholders, despite any alleged deficiencies in the notice given; and that the Shareholder Group had failed to establish any breach of fiduciary duty by the board of directors. Accordingly, the trial court rendered judgment, denying the Shareholder Group's request for a preliminary injunction.
The Shareholder Group appealed from the judgment denying its request for a preliminary injunction, which we dismissed as moot. See Silliman Private School Corporation v. Shareholder Group, XXXX-XXXX (La.App. 1st Cir.2/16/01), 789 So.2d 20, writ denied, XXXX-XXXX (La.3/30/01), 788 So.2d 1194. In dismissing the initial appeal, we determined that the Shareholder Group's appeal from the trial court's judgment denying the permanent injunction was moot, given the relief sought by the Shareholder Group in its petition, i.e., that a preliminary injunction issue, prohibiting anyone from acting on the disputed shares until the trial court made a determination of their validity. Thus, as (1) the action sought to be enjoined, i.e., the voting of the challenged shares for election of *1091 directors and approval of other matters, had taken place; and (2) the trial court had already rendered judgment following trial on the merits, the appeal was dismissed as moot. Silliman Private School Corporation, XXXX-XXXX at p. 7, 789 So.2d at 24.

DISCUSSION
The Shareholder Group now appeals, on the merits, the trial court's judgment of December 12, 2000, wherein the trial court denied the request for a permanent injunction, upon concluding that the 1,000 challenged shares of stock at issue were duly authorized by vote of the shareholders on January 21, 1986 (and, thus, were validly issued), and denied the Shareholder Group's request for attorney's fees and costs.
On appeal, the Shareholder Group maintains the same contentions that it has asserted throughout these proceedings, i.e., that the meeting wherein the additional shares were issued was improper due to lack of proper notice and quorum; that certain amendments to the articles of incorporation cannot be considered "consummated" prior to their having been filed with the Secretary of State; and that the board of directors breached their fiduciary duty to the shareholders by acting in a subversive manner against the shareholders.
After a careful consideration and a thorough review of the record, including the extensive stipulations of the parties, we find no merit to these claims. Instead, we conclude that the record fully supports the findings and conclusions of the learned trial court, as carefully articulated at length in its reasons for judgment or "Opinion," which we attach hereto as "Appendix A" and incorporate by reference herein.
In particular, we note that the findings of whether notice was given, whether there was a breach of duty, and whether the board acted in a subversive manner toward the shareholders are all factual findings. Considering the evidence and the extensive stipulations of fact, we find no error in the trial court's factual findings with regard to notice, breach of duty, and challenges or claims that the corporation's proceedings were flawed for failure to follow formalities. There is no evidence in the record to support the Shareholder Group's claims that the board acted in a subversive manner or breached a duty to the shareholders. Furthermore, the record shows that any action taken after the alleged defects in notice or failure to observe corporate formalities was properly ratified by the shareholders.
Where two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 883 (La.1993). Moreover, when findings are based on a credibility determination, a factfinder's decision to credit the testimony of one of two or more witnesses can virtually never be manifestly erroneous or clearly wrong. Clark v. Diamond B. Construction, 2000-2146, p. 9 (La.App. 1st Cir.12/28/01), 803 So.2d 1113, 1119.
Accordingly, after having reviewed the record in its entirety, we cannot say that the trial court was clearly wrong in its determination that the shares of stock at issue were duly authorized by vote of the shareholders, based on the evidence before us.
Thus, these assignments lack merit.

ATTORNEY'S FEES AND COSTS
In addition to the assignments on the merits, the Shareholder Group contends that the trial court erred in denying its request for attorney's fees and costs. It is well settled in our jurisprudence that *1092 attorney's fees are not due and owing a successful litigant unless specifically provided for by contract or by statute. Frank L. Beier Radio, Inc. v. Black Gold Marine, Inc., 449 So.2d 1014, 1015 (La.1984). Moreover, attorney's fee statutes are construed strictly because an award of attorney's fees is exceptional and penal in nature. Frank L. Beier Radio, Inc., 449 So.2d at 1015-1016.
Citing Lain v. Credit Bureau of Baton Rouge, Inc., 93-1166 (La.App. 1st Cir.4/8/94), 637 So.2d 1080, writ denied, 94-2010 (La.11/4/94), 644 So.2d 1049, the Shareholder Group contends it is entitled to recover attorney's fees pursuant to LSA-R.S. 12:227(A) and (C). Silliman Corporation counters that attorney's fees are not due the Shareholder Group inasmuch as LSA-R.S. 12:227 contemplates indemnification for expenses incurred by a director, officer or employee named as a defendant by reason of the fact that he is or was a director, officer or employee of the corporation. Silliman further argues that such fees are not due, noting the Shareholder Group's demands have been rejected as meritless, and that the Shareholder Group's actions have damaged Silliman's reputation and financial condition.
Notably, in Lain, costs and attorney fees were awarded only after the parties seeking reimbursement prevailed in the suit on the merits. Here, the Shareholder Group's claims are without merit, and the trial court properly rejected these claims on the merits in the proceedings below. Thus, we find no basis herein for an award of costs and attorney's fees to the Shareholder's Group pursuant to LSA-R.S. 12:227(A).
This assignment likewise lacks merit.

CONCLUSION
For the above and foregoing reasons, the December 12, 2000 judgment of the trial court is affirmed. Costs are assessed against appellants, the Shareholder Group.
AFFIRMED.

APPENDIX "A"

NO. 32,171.

20TH JUDICIAL DISTRICT COURT

PARISH OF EAST FELICIANA

STATE OF LOUISIANA

OPINION
On August 13, 1999 Silliman Private School Corporation filed an action to enjoin the Shareholder Group from designating a meeting called for August 16, 1999, as a special meeting of the shareholders of Silliman Corporation and from asserting that any action taken at such meeting is an act or deed of Silliman Corporation which may bind, obligate, alter, or affect the corporation in anyway. Pursuant to an agreement by the parties, the Court issued a temporary restraining order and injunction precluding any action constituting change in the status quo of Silliman Corporation pending a hearing on the issues raised in the petition filed by Silliman Private School Corporation. Instead of filing an answer and reconventional demand, on August 27, 1999, Shareholder Group filed a petition asserting that the issuance of an additional 1,000 shares of stock by the board on January 21, 1986, was and is totally invalid. Shareholder Group also requested a preliminary injunction prohibiting the Board of Directors of Silliman Corporation or any shareholders from acting *1093 on the additional 1,000 shares of stock until their validity is determined by this Court. The preliminary injunction was denied by this court on October 27, 1999. The trial of this matter was on September 28, 2000.
Silliman Private School Corporation is a nonprofit, stock corporation which was established on October 14, 1965. Silliman Corporation owns the physical facilities occupied by the private school operated under the name of "Silliman Institute." Silliman Institute is a nonprofit, non-stock corporation established in 1966 to operate the private school. Silliman Corporation's original Articles of Incorporation authorized the issuance of 1,000 shares of stock. On December 17, 1985, the Board of Directors approved a proposal to amend the Articles of Incorporation to provide for the issuance of another 1,000 shares and sent it to the stockholders for approval. On January 8, 1986, a letter of notice was sent to the stockholders regarding a meeting set for January 21, 1986. The notice included the proposal to amend the Articles of Incorporation to allow for the issuance of an additional 1,000 shares. At the meeting a motion was made, seconded, and passed to increase the number of shares offered to 2,000.
At the trial of this matter the parties entered into a joint stipulation as to the facts which are set out below (Exhibit Joint-1).
1. Silliman Private School Corporation ("Silliman") is a Louisiana corporation domiciled in East Feliciana Parish, whose incorporation was filed of record with the Louisiana Secretary of State's office on October 14, 1965, and filed with the Clerk of Court of East Feliciana Parish, Louisiana.
2. Silliman is a non-profit, stock corporation, the business of which is ownership of physical facilities occupied by the private school operated under the name of "Silliman Institute."
3. Article VI of Silliman's original Articles of Incorporation (the "Articles") authorized the issuance of 1,000 shares of stock, with a par value of $100.00 per share.
4. Article VI of the Articles state that,
"No one person may own more than ten shares of said stock."
5. Article VI of the Articles provides that "during the lifetime of a shareholder, his share or shares in the corporation may be transferred only to the corporation. Any such transfer shall be regulated by the provisions of R.S. 12:124. In the case of a death of a shareholder, any shares then owned by him shall be inherited by his legal or testamentary heirs, subject to the same restrictions which applied to the original owner." Article VI of the Articles has never been amended.
6. Article X of the Articles states that meetings shall be held at the registered office of the corporation in the Town of Clinton, and that no business would be transacted at a stockholder's meeting unless a quorum was present. A quorum was defined as,
"A majority of the shareholders present, in person or by proxy."
7. Neither the Articles nor the Bylaws, provide a method of amending the Articles.
8. La. R.S. 12:237(B) provides a procedure by which an amendment altering the articles of a non-profit corporation may be adopted if the articles do not stipulate a method of amendment. La. R.S. 12:237(B), in pertinent part, requires two-thirds (2/3) in interest of the voting members present, to approve an amendment of the Articles of Incorporation. Additionally, a majority of the members shall constitute a quorum, and a quorum must be *1094 present at the meeting in which the amendment to the Articles is to be considered. Lastly, the notice of such meeting must be transmitted to the members not less than thirty (30) days prior to the meeting.
9. On December 17, 1985, the meeting of the Board of Directors approved the proposal for 1,000 shares of stock at $500.00 per share, par value, to be used for capital improvements, which was to be presented to the stockholders.
10. By letter dated January 6, 1986, which is postmarked January 8, 1986, notice of the stockholder's meeting to be held on Tuesday, January 21, 1986, at 7:00 o'clock p.m., was sent out to the shareholders, which included the proposal to amend the Articles of Incorporation, to increase the total capital stock from 1,000 shares to 2,000 shares. No mention in the notice was made of the value of the stock or its class.
11. The minutes of stockholders meeting of January 21, 1986 do not indicate the number of shareholders present in person or by proxy. The number of shareholders of Silliman stock as of January 21, 1986 was 152 persons, a majority of which would have been 77. The number of shares of Silliman capital stock outstanding at January 21, 1986 was 1009 shares.
12. On January 21, 1986, a stockholder's meeting was held, and a motion was made and seconded to "increase Silliman stock form 1,000 to 2,000 shares to be offered for sale at $500.00 per share." The motion carried by a vote of 510 shares "for" and 15 shares "against."
13. The letter dated January 6, 1986, referenced in number 11 above, was dated and mailed less than thirty days prior to the meeting held on January 21, 1986.
14. The minutes of the January 21, 1986 meeting indicate that stock was to be offered for sale at $500.00 per share, which was not set forth in the notice of January 6, 1986, to the stockholders.
15. No amendment of the Articles, reflecting approval at the shareholders meeting held on January 21, 1986 of an increase in shares of stock of Silliman, was filed with the Louisiana Secretary of State until August 6, 1999.
16. Written notice dated January 7, 1988 and postmarked January 8, 1988 was sent to shareholders for a stockholder's meeting to be held on Tuesday, January 19, 1988.
17. On January 19, 1988, a shareholder's meeting was held, for which the minutes do not indicate the number of shareholders present or represented, at which meeting the shareholders adopted a proposal to reduce the price per share of the second 1,000 shares of stock from $500.00 per share to $300.00 per share. The vote was 360 "for" and 149 "against." No amendment of the Articles was filed regarding the sale price of the shares from $500.00 to $300.00 per share.
18. An unsigned letter of August 4, 1999, calling a special shareholders meeting by a group of twenty-five Silliman shareholders, was provided to all holders of record, including holders of the initially authorized 1,000 shares of Silliman capital stock, as well as the additional 1,000 shares which were the subject of a shareholder's meeting held on January 21, 1986 (hereinafter, the "Additional Shares").
19. At least 128 of the Additional Shares were sold after January 21, 1986 and prior to July, 1999.
20. No legal objection or challenge to the validity of the Additional Shares has been raised since January 21, 1986, until the present dispute.
21. At least seven individuals who became members of the Shareholder Group *1095 purchased ten shares of the Additional Shares on July 22, 1999.
22. Current counsel to the Shareholder Group (Charles E. Griffin, II) purchased three shares of the Additional Shares on July 22, 1999 and co-counsel to Silliman in connection with this matter (Robert O. Butler, Jr.) purchased three of the Additional Shares on July 27, 1999.
23. John P. Lawton, a member of the Shareholder Group purchased one share of the Additional Shares on July 27, 1999.
24. At least five members of the Shareholder Group purchased Additional Shares between January, 1988 and July 22, 1999.
25. At least nine members of the Shareholder Group have purchased shares from parties other than Silliman.
26. Members of the Shareholder Group and counsel to Shareholder Group were present at the special shareholders meeting of Silliman held on July 19, 1999 and voted shares of Silliman stock in person or by proxy.
27. At a special Silliman Board Meeting held on July 27, 1999, approval was given for sale of 179 Additional Shares to current Silliman directors and immediate family members of the directors.
28. At a special Silliman Board Meeting held on July 27, 1999, the Board approved, (by vote of 7 "for," O "against," 2 abstaining and the Chairman not voting), the sale of all of the remaining 844 Additional Shares.
29. In several instances, payment for Additional Shares sold in accordance with approval granted at the July 27, 1999 Silliman Board Meeting was made by an individual other than the person to whom shares were issued.
30. Based on shareholder records of Silliman, at least 236 of the shares of capital stock of Silliman have been sold to individuals rather than to Silliman.
31. Since at least the early 1970's, quorum for stock holder meetings has been determined based on the number of shares present or represented at the meetings. Corporate records are unclear regarding the method used for calculation of quorum for shareholders meetings prior to the early 1970's.
32. The usual and customary length of notice for annual meetings of Silliman is 10-15 days.
33. The Silliman corporate records were removed from the principal offices of Silliman for photocopy and review by counsel during the weeks of August 9, 1999 and September 27, 1999.
The Shareholder Group asserts the following as grounds for the invalidity of the issuance of the additional stock.
1. That a quorum was not present at the January 21, 1986 shareholders meeting,
2. That inadequate notice was given for the January 21, 1986 shareholders meeting,
3. The January 21; 1986 shareholders meeting was not held at the registered office of the Corporation in the Town of Clinton as required under the Articles of Incorporation,
4. The amendment to the articles, which was not filed with the Secretary of State until August 6, 1999, incorrectly states the minutes of the shareholder's meeting on January 21, 1986; therefore, the stockholders were deprived of certain property rights,
5. Notice and quorum were inadequate for the January 19, 1988, shareholders meeting, and
*1096 6. That the officers and directors of Silliman Corporation have breached their fiduciary duties to the Corporation.
Because the acts involving the approval and authorization of the 1,000 Additional Shares occurred over thirteen years ago, the claim asserted by the Shareholder Group as to the invalidity of these shares has prescribed. Regarding claims of ultra vires acts, La. R.S. 12:208(A)(1) specifically provides that,
"In action by a member of the corporation to set aside such act, conveyance or transfer, brought within one year after the act was done or the conveyance or transfer was consummated, which time limit shall not be subject to suspension on any ground or interruption on any ground other than timely suit."
La. R.S. 12:208(B) provides:
"In any action brought pursuant to subsection (A)(1) or (2) of this section, the plaintiff shall sustain the burden of proof that he has not at any time prior thereto assented to the act, conveyance or transfer in question, and that in bringing the action he is not acting in collusion with officials of the corporation."
The fact that the Articles were not formally amended, with the Secretary of State, stating the approval of the Additional Shares authorized is of no consequence. The court finds that the acts were "done" or "consummated" when the proposal to increase the shares was presented to the shareholders at the annual meeting, where the proposal was approved. Additionally, shares were subsequently sold as a result of the availability of these additional shares, and no person has previously objected to the authorization of these additional sales until the filing of this lawsuit in August 1999. Because the authorization of these Additional Shares took place over thirteen years ago, the Shareholder Group cannot now complain that the shares are invalid. Further, complaints as to improper notice and quorum have prescribed for the same reason.
The Shareholder Group contends the Board of Directors breached their fiduciary obligations. La. R.S. 12:226(A) provides, in pertinent part,
"Officers and directors shall be deemed to stand in a fiduciary relation to the corporation and its members and shall discharge the duties of their respective positions in good faith, and with that diligence, care, judgment and skill which ordinarily prudent men would exercise under similar circumstances in like positions."
In order for a party to bring a claim for loss sustained by the corporation as a result of a breach of fiduciary duty, the shareholder must bring a derivative action on behalf of the corporation. Palowsky v. Premier Bancorp, 597 So.2d 543 (La.App. 1st Cir.1992). Because the instant suit was not filed as a derivative action, losses suffered by the corporation will not be considered. However, if a breach of fiduciary duty causes a direct loss to the shareholder the shareholder may have a right to sue individually. Id. As a result, the Shareholder Group had to prove that they suffered a direct personal loss.
The Shareholder Group points to individuals who inquired with office personnel about buying stock. The attempt by the Shareholder Group to make out a claim that the Board of Directors breached their fiduciary duty because the stock was not made available to these potential buyers is flawed because these potential buyers were not shareholders at the time the inquiries about the availability of stock were made. As a result, the Shareholder Group cannot maintain an action by asserting a loss that may have been suffered by those individuals.
*1097 The Shareholder Group also claims the formalities surrounding the July 27, 1999 were flawed. The Shareholder Group contends that no timely notice was given to the board members. La. R.S. 12:224(E)(6) provides that "such notice of meetings of the board shall be given as provided in the by-laws." Because the by-laws of Silliman Corporation, if any exist, were not introduced into evidence, the court has no way of determining the required notice for such meetings. In any event Ms. Kim Granier testified that she personally called each member that day to notify the board members of the special meeting. Although evidence was introduced as to a customary twenty-four hour notice, Mr. Tynes, current President and board member, countered this contention by testifying that the 24 hour notice had not been consistently followed in the past. Additionally, La. R.S. 12:224(E)(6) provides that directors present at a meeting shall be deemed to have received due, or to have waived, notice thereof. Ms. Fotenoet, a board member at the time of this special meeting, was the only board member to complain of the improper notice that she received earlier on the day of the meeting. However, Ms. Fotenoet attended the meeting and her complaints as to notice will not be considered now as she is deemed to of received due notice by her attendance.
It is true the Board of Directors, some of their family members, and others from whom they personally solicited the sale of stock constituted the bulk of those individuals who requested and bought the remaining 844 shares of stock on July 27, 1999. The Shareholder Group is upset with the fact that they did not have the opportunity to buy the stock. However, this argument is flawed because the stock has been available for purchase for the past 13 years. According to Mr. Ligon's testimony, a shareholder and previous board member, all shareholders received a financial statement before the annual meeting which showed how much authorized and unissued stock was available. Mr. Ligon also testified that he had announced the availability of the newly issued stock at different parent's meetings. Additionally, at the regular board meeting, which was held five days before the July 27, 1999 special board meeting, thirty stock purchase requests were approved (see Exhibit B, Board Minutes, July 22, 1999), which were sold from the Additional Shares authorized in 1986.
The Shareholder Group cannot now complain of the missed opportunity on July 27, 1999 to buy stock. In Dunbar v. Williams, 554 So.2d 56, at 69 (La.App. 4th Cir.1988) the minority shareholders, who filed a derivative action, complained that they were not given the opportunity to participate in a stock sale. The court held that it would not require a fiduciary to sell his own stock only after making sure the other shareholders did not want to participate. Id. Although the facts in Dunbar involved the opportunity to sell stock as opposed to the opportunity to buy stock, the result in this case is the same. The court is not going to recognize breaches of fiduciary duties grounded in missed opportunities when the ability to take advantage of the opportunity was clearly present.
The fact that the approval of the sale of 844 shares of stock took place at a special board meeting as opposed to a regular board meeting is of no consequence. Because there is no requirement in the articles on the particular type of board meeting which must be held in order to approve stock. In addition, the sale of stock to minors is not prohibited in Silliman Corporation's articles of incorporation.
Based on the evidence adduced at trial, the court finds that the 1,000 shares of stock of Silliman Private School Corporation *1098 authorized by vote of its shareholders on January 21, 1986 to be duly authorized and validly existing. The court also denies all requests made by Shareholder Group for an award of fees and costs in these proceedings.
CLINTON, LOUISIANA this 22nd day of November, 2000.
/s/ Wilson R. Ramshur, Judge
 Wilson R. Ramshur, Judge
/s/ JUDICIAL DISTRICT COURT
NOTES
[1] The facts and procedural history of this case were previously set forth in Silliman Private School Corporation v. Shareholder Group, XXXX-XXXX (La.App. 1st Cir.2/16/01), 789 So.2d 20, writ denied, XXXX-XXXX (La.3/30/01), 788 So.2d 1194, wherein the Shareholder Group appealed a prior judgment of the trial court denying the group's request for a preliminary injunction.