858 So.2d 636 (2003)
Edward CONERLY
v.
STATE of Louisiana Through the LOUISIANA STATE PENITENTIARY AND THE DEPARTMENT OF CORRECTIONS.
No. 2002 CA 1852.
Court of Appeal of Louisiana, First Circuit.
June 27, 2003.
Writ Denied November 14, 2003.
*640 John P. Calmes, Jr., Baton Rouge, for Plaintiff/Appellee, Edward Conerly.
David G. Sanders, Baton Rouge, for Defendant/Appellant, State of Louisiana through the Department of Public Safety and Corrections.
Before: CARTER, C.J., WHIPPLE, and CIACCIO,[1] JJ.
CARTER, C.J.
The State of Louisiana, through the Department of Public Safety and Corrections (the State), appeals a trial court judgment overruling its peremptory exception raising the objection of no cause of action and awarding damages for injuries sustained when an inmate slipped and fell on the premises of the Louisiana State Penitentiary at Angola, Louisiana (Angola).

FACTS
Edward Conerly was an inmate at Angola from February of 1982 until 1991. In September of 1982, Conerly underwent reconstructive surgery to his left knee. On December 7, 1982, Conerly allegedly reinjured his left knee when he slipped and fell in Kool-Aid as he was being ushered out of the Camp D kitchen.
Conerly timely filed the instant suit for damages against the State on December 7, 1983. Trial in this matter was held May 17, 2002. Prior to trial, the State filed a peremptory exception raising the objection of no cause of action, contending that Conerly's claim was perempted. The trial court overruled the exception and rendered judgment awarding Conerly damages in the amount of $15,000 together with legal interest from date of judicial demand. The State now appeals.

PEREMPTORY EXCEPTION RAISING THE OBJECTION OF NO CAUSE OF ACTION
The objection of no cause of action questions whether the law extends a remedy to anyone under the factual allegations of the petition. The purpose of an exception raising the objection of no cause of action is to determine the sufficiency in law of the petition. In reviewing a trial court's ruling sustaining an exception raising the objection of no cause of action, the appellate court should conduct a de novo *641 review. Stroscher v. Stroscher, 2001-2769, p. 3 (La.App. 1st Cir.2/14/03), 845 So.2d 518, 523.
Generally, no evidence may be introduced to support or controvert the exception. However, a jurisprudentially recognized exception to this rule allows the court to consider evidence that is admitted without objection to enlarge the pleadings. For purposes of determining the issues raised by the exception, the well pleaded facts in the petition must be accepted as true. The court must determine if the law affords plaintiff a remedy under those facts. Any doubts are resolved in favor of the sufficiency of the petition. The question, therefore, is whether, in the light most favorable to the plaintiff, and with every doubt resolved in his behalf, the petition states any valid cause of action for relief. Stroscher, 845 So.2d at 522.
The State's argument on the exception is not that Conerly's petition is deficient, but rather that at the time of trial, Conerly's claim was extinguished by peremption. However, a peremptory exception raising the objection of no cause of action requires the court to direct its focus at whether, on the face of the petition, the plaintiff is legally entitled to the relief sought. Perez v. Trahant, 2000-2372, p. 5 (La.App. 1st Cir.12/28/01), 806 So.2d 110, 115, writs denied, XXXX-XXXX and XXXX-XXXX (La.8/30/02), 823 So.2d 953. Under these guidelines, we have reviewed Conerly's petition and find that he pleaded facts sufficient to establish a cause of action against the State for negligence. Moreover, Conerly's claim was not perempted at the time the petition was filed. Thus, we find no error in the trial court's judgment denying the peremptory exception raising the objection of no cause of action.

APPLICATION OF LSA-R.S. 49:112
The peremptory exception raising the objection of no cause of action is generally the correct procedural device for raising the issue of preemption; however, in this case the State's arguments exceed the limitations of that procedural device. See Coffey v. Block, 99-1221 p. 8 (La.App. 1st Cir.6/23/00), 762 So.2d 1181, 1186, writ denied, 2000-2226 (La.10/27/00), 772 So.2d 651. The State contends Conerly's claim is perempted, based on application of LSA-R.S. 49:112, which provides:
No claim or debt against the state shall be allowed by the state auditor or paid by the state treasurer after the lapse of ten years from the happening of the event or of the facts upon which any suit is founded or judgment rendered or of the execution of the contract under which the claim is made. No interruption or suspension whatsoever of this prescription shall be allowed. The provisions of this Section shall not apply to the claims, or the judgment rendered thereon, listed in Section 2 of Act No. 110 of 1946.[2] (Footnote added.)
The State argues that although the statute uses the term "prescription," the statute's provisions are clearly peremptive. If the statute is peremptive, as the State argues, then this court can raise the issue of peremption on its own motion. LSA-C.C. art. 3460. However, if the statute is prescriptive, since the issue of prescription has not been specially pleaded, then it is not properly before the court and cannot be raised on the court's own motion. LSA-C.C.P. *642 art. 927 B. Thus, we must first determine whether LSA-R.S. 49:112 is peremptive or prescriptive in nature.
Whether the statutory time period is one of peremption or prescription is a question of statutory interpretation. The function of statutory interpretation and the construction to be given to legislative acts rests with the judicial branch of government. Rougeau v. Hyundai Motor America, XXXX-XXXX, p. 5 (La.1/15/02), 805 So.2d 147, 151. The starting point in the interpretation of any statute is the language of the statute itself. A.K. Durnin Chrysler-Plymouth, Inc. v. Jones, XXXX-XXXX, p. 4 (La.App. 1st Cir.5/10/02), 818 So.2d 867, 870. When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written, and its letter shall not be disregarded in search of the intent of the legislature or under the pretext of pursuing its spirit. A statute shall be construed to give meaning to the plain language of the statute, and courts may not extend statutes to situations that the legislature never intended to be covered. Id.
The Louisiana Supreme Court has set forth the difference between peremption and prescription as follows:
Peremption differs from prescription in several respects. Although prescription prevents the enforcement of a right by legal action, it does not terminate the natural obligation (La. Civ.Code art. 1762(1)); peremption, however, extinguishes or destroys the right (La. Civ. Code Art. 3458). Public policy requires that rights to which peremptive periods attach are to be extinguished after passage of a specified period. Accordingly, nothing may interfere with the running of a peremptive period. It may not be interrupted or suspended; nor is there provision for its renunciation. And exceptions such as contra non valentem are not applicable. As an inchoate right, prescription, on the other hand may be renounced, interrupted, or suspended; and contra non valentem applies an exception to the statutory prescription period where in fact and for good cause a plaintiff is unable to exercise his cause of action when it accrues.
State Bd. of Ethics v. Ourso, XXXX-XXXX, p. 4 (La.4/9/03), 842 So.2d 346, 349, quoting Reeder v. North, 97-0239, pp. 12-13 (La.10/21/97), 701 So.2d 1291, 1298.
In distinguishing statutory limitation periods as peremptive or prescriptive, each statutory time period must be considered separately on its merits. Pounds v. Schori, 377 So.2d 1195, 1199 (La.1979). The primary consideration is the intent of the legislature. Thus, in making such a distinction, courts look to the language of the statute, the purpose behind the statute, and the public policy mitigating for or against suspension, interruption or renunciation of the time period. State Bd. of Ethics, 842 So.2d at 349.
In 1948, the Legislature passed 1948 La. Acts No. 60, § 1. The Act was entitled:

AN ACT
To provide that no claim or debt against the State of Louisiana shall be allowed by the Auditor or paid by the Treasurer after the lapse of ten years from the happening of the event or of the facts upon which any suit is founded or judgment rendered or of the execution of the contract under which the claim is made, and that no interruption or suspension whatsoever of this prescription shall be allowed, and providing *643 exceptions hereto. (Emphasis added.)
The Act provides:
Section 1. Be it enacted by the Legislature of Louisiana, That no claim or debt against the State of Louisiana shall be allowed by the Auditor or paid by the Treasurer after the lapse of ten years from the happening of the event or of the facts upon which any suit is founded or judgment rendered or of the execution of the contract under which the claim is made. No interruption or suspension whatsoever of this prescription shall be allowed. The provisions of this act shall not apply to the claims, or the judgment rendered thereon, listed in Section 2 of Act No. 110 of 1946. (Emphasis added.)
Section 2. All laws or parts of laws in conflict herewith are hereby repealed.
Article 3, section 16 of the Louisiana Constitution of 1921, in effect at the time the Act was proposed, required that each bill introduced before the Legislature have a title indicative of its object.[3] The title to 1948 La. Acts No. 60, § 1, which enacted LSA-R.S. 49:112 and states the Act's purpose, refers to the time period it creates as one of prescription. Although not yet codified at the time, the doctrine of peremption was firmly established in Louisiana jurisprudence and was even referred to in LSA-Const. art. 3, § 35 (1921). Hebert v. Doctors Memorial Hospital, 486 So.2d 717, 722 (La.1986); see also Guillory v. Avoyelles Railway Co., 104 La. 11, 28 So. 899, 901 (1900). Weight must be given to the indication of the Act's object, contained in its title, in determining the Legislature's intent in passing LSA-R.S. 49:112. Hebert, 486 So.2d at 724.
We also find it significant that the limitation period of LSA-R.S. 49:112 applies only to claims or debts against the State. In general, a money judgment prescribes ten years from the date it is signed or, if an appeal is taken, ten years from the date the judgment becomes final. LSA-C.C. art. 3501.[4] However, a money judgment may be revived at any time before it prescribes by an interested party in an ordinary proceeding brought in the court in which the judgment was rendered. LSA-C.C. art. 3501 and LSA-C.C.P. art.2031. We find that the Legislature intended to create an exception to this general principle and legislatively overrule exceptions to the prescriptive period applicable to judgments against the State through its enactment of LSA-R.S. 49:112. The Louisiana Supreme Court has recognized that the Legislature is empowered to legislatively overrule exceptions to prescriptive periods, such as it did in enacting LSA-R.S. 9:5628, which governs the time for filing medical malpractice actions. See Hebert, 486 So.2d at 724; Chaney v. State of La. DHHR, 432 So.2d 256, 259 (La.1983).[5] We find this to be the legislative purpose sought to be achieved by the limitation period set forth in LSA-R.S. 49:112, which is one of the most significant factors in *644 distinguishing peremption from prescription. See Hebert, 486 So.2d at 724.
Thus, a money judgment rendered against any party other than the State of Louisiana may be revived and the consequences of the ten-year prescriptive period set forth in LSA-C.C. art. 3501 avoided. LSA-C.C. art. 3501 and LSA-C.C.P. art. 2031. However, if the money judgment is against the State of Louisiana, LSA-R.S. 49:112 prohibits the judgment's revival as well as any other form of interruption or suspension of the prescriptive period. Any other interpretation of LSA-R.S. 49:112 would lead to absurd results and would be impermissible. See Palmer v. Louisiana Forestry Commission, 97-0244, p. 11 (La.10/21/97), 701 So.2d 1300, 1306.
Other factors used to distinguish whether a time period is peremptive or prescriptive are: 1) whether the statute under consideration creates both the right of action and stipulates the delay during which the right can be exercised; 2) whether there exists an underlying public interest that the right exist only for a limited period of time; 3) whether the claim is of a public law nature; and 4) whether the limitation period is less than one year. Hebert, 486 So.2d at 722 and 724. LSA-R.S. 49:112 sets forth a period of limitation, but does not purport to create a right to file suit against the State.[6] Moreover, the period of limitation is not less than one year. However, a claim for payment of a money judgment rendered against the State is of a public rather than a private law nature and there is a public interest in limiting the right of a litigant to enforce payment against the State.
The period of limitation contained in LSA-R.S. 49:112 clearly has some aspects of a peremptive period. Most notably, as the State points out in its brief to this court, the statute provides that there will be no interruption or suspension of the time period. The Louisiana Supreme Court has recognized this as a characteristic of peremption. Flowers v. Rausch, 364 So.2d 928, 931 (La.1978). However, the Legislature is free to enact statutes containing prescriptive periods and to dispense with exceptions to those prescriptive periods. See Hebert, 486 So.2d at 724. Moreover, had the Legislature meant for the time period to be peremptive, it could have expressed its intent in the title or text of the act enacting LSA-R.S. 49:112 or in the language of LSA-R.S. 49:112 itself.[7]
Basically, LSA-R.S. 49:112 creates a hybrid time period as concerns actions against the State. Despite having some characteristics in common with peremptive time periods, we find that the time period set forth in LSA-R.S. 49:112 is, as the Legislature described it, a prescriptive period, with the qualifications that the prescriptive period is not subject to interruption or suspension. The State has not specially pleaded prescription and the objection cannot be raised by this court. LSA-C.C.P. art. 927. Thus, the issue of *645 prescription is not properly before us and will not be addressed herein. Moreover, any attempt to raise prescription under LSA-R.S. 49:112 would, at this time, be premature.

LIABILITY
Under the duty-risk analysis applicable to Conerly's claim, a determination of liability requires proof of five separate elements, all of which must be answered affirmatively for the plaintiff to recover: (1) proof that the defendant had a duty to conform his conduct to a specific standard of care (the duty element); (2) proof that the defendant failed to conform his conduct to the appropriate standard (the breach of duty element); (3) proof that the defendant's substandard conduct was a cause-in-fact of the injuries (the cause-in-fact element); (4) proof that the defendant's substandard conduct was a legal cause of the injuries (the scope-of-liability or scope-of-protection element); and (5) proof of actual damages (the damages element). Berg v. Zummo, XXXX-XXXX, p. 11 (La.4/25/01), 786 So.2d 708, 715-716. A negative answer to any of the inquiries of the duty-risk analysis results in a determination of no liability. Perkins v. Entergy Corp., XXXX-XXXX, p. 7 (La.3/23/01), 782 So.2d 606, 611.
The State does not dispute that it owed Conerly a duty. Prison authorities owe a duty to use reasonable care to protect inmates from harm. Misenheimer v. West Baton Rouge Parish Sheriff's Office, 95-2427, p. 4 (La.App. 1st Cir.6/28/96), 677 So.2d 159, 161, writ denied, 96-1853 (La.10/25/96), 681 So.2d 371.
Conerly testified that the accident occurred after the last meal of the day. At trial, it was established that after the inmates finished eating, a security officer directed certain inmates, according to the rows in which they had been sitting, to rise. At that time, the inmates were expected to follow a certain procedure in which they would return their cups, trays and utensils. Conerly testified that inmates were required to place their cups in a rack situated above a drain in the floor. Emmitt Jones, an inmate at Angola who was present in the Camp D kitchen when the accident occurred, testified that the cups were placed upside down in the rack and, although there was a drain in the floor beneath the rack, Kool-Aid left in the cups would spill onto the floor. Conerly estimated that on the date of the incident, a puddle of Kool-Aid measuring approximately three feet wide had accumulated by the time he reached the rack to return his cup.
Major Andrew Jackson Dunn testified by deposition that when a spill occurred in the kitchen, it was standard procedure to stop the line of inmates so that the spill could be cleaned. However, Major Dunn could not state for sure whether he was present at the time of the accident or whether this procedure was followed on the date Conerly fell. Both Jones and William Hill, a fellow inmate at Angola, testified that they were present in the kitchen when the accident occurred and that the procedure outlined by Major Dunn was not followed after the evening meal. Hill testified that after the evening meal, the kitchen was not cleaned until all of the inmates left.
The trial court specifically found the testimony of the inmates to be credible and accepted their account of the events surrounding the accident over the deposition testimony of Major Dunn regarding the general procedure followed in the Camp D kitchen. Based on this credibility determination, the trial court found that the State breached its duty by ushering rows of inmates out of the Camp D kitchen *646 without allowing them to stop so that someone could clean the floor where Kool-Aid from the inmates' cups had accumulated.
Breach of duty is a question of fact, subject to the manifest-error standard of review. Ethyl Corp. v. Gulf States Utilities, Inc., 2001-2230, p. 9 (La.App. 1st Cir.10/2/02), 836 So.2d 172, 178, writ denied, 2002-2709 (La. 12/19/02), 833 So.2d 340. When factual findings are based on a credibility determination, a fact-finder's decision to credit the testimony of one of two or more witnesses can virtually never be manifestly erroneous or clearly wrong. Silliman Private School Corp. v. Shareholder Group, XXXX-XXXX, pp. 5-6 (La.App. 1st Cir.5/10/02), 819 So.2d 1088, 1091, writ denied, XXXX-XXXX (La.9/20/02), 825 So.2d 1176. Accordingly, we cannot say the trial court was clearly wrong in its finding that the State breached the duty it owed to Conerly.
Cause-in-fact is generally a "but for" inquiry. Hughes v. Goodreau, 2001-2107, p. 18 (La.App. 1st Cir.12/31/02), 836 So.2d 649, 662, writ denied, XXXX-XXXX (La.4/21/03), 841 So.2d 793. Thus, the cause-in-fact inquiry is whether the harm to Conerly would have occurred but for the State's breach of its duty. Causation is a question of fact. The trier-of-fact's determinations are entitled to great weight and cannot be disturbed absent manifest error or unless clearly wrong. Ethyl Corp., 836 So.2d at 179; see also Berg, 786 So.2d at 716.
Conerly testified that as he was ushered through the line in the kitchen, he stepped in the Kool-Aid, which caused his knee to "pop" and "give out." Conerly stated that he then fell to the floor. Both Jones and Hill testified that they saw Conerly, after he fell, lying on the floor in the puddle of Kool-Aid. The trial court correctly noted that the witnesses' explanations of the events surrounding the accident were not refuted. We cannot say the trial court, based on its credibility determination, was manifestly erroneous in finding that the harm to Conerly would not have occurred but for the breach of duty by the State.
The legal-cause or scope-of-duty inquiry ultimately turns on a question of policy as to whether the particular risk falls within the scope of the duty. Bowman v. City of Baton Rouge/Parish of East Baton Rouge, XXXX-XXXX, p. 6 (La. App. 1st Cir.5/9/03), 849 So.2d 622, 627, citing Roberts v. Benoit, 605 So.2d 1032, 1044 (La.1991). A risk of a particular injury may be found not within the scope of a duty where the circumstances of that injury to that plaintiff could not be reasonably foreseen or anticipated, because there was no ease of association between the risk of that injury and the legal duty. Although the determination of whether to assign a legal duty is fact specific, the issue of whether there is a duty is ultimately a question of law. Bowman, 849 So.2d at 627. After review, we find no legal error in the trial court's conclusion that the risk that an inmate would slip and fall when directed to walk through liquid that had accumulated on a smooth concrete floor is encompassed within the scope of protection afforded by the State's duty to use reasonable care to protect the inmate from harm.
The evidence presented at trial establishes that on the night of the fall, Conerly went to the emergency room at Angola and complained of pain in his knee. Conerly testified that the pain persisted throughout the night and that he experienced swelling in his knee for an extended period of time, even after receiving treatment at Charity Hospital in New Orleans. Based on Conerly's testimony, the trial court found that Conerly met his burden of *647 proving actual damages. After reviewing the record, we cannot say the trial court's finding is manifestly erroneous or clearly wrong.
Considering the foregoing, we find no error in the trial court's finding of liability on the part of the State.

COMPARATIVE FAULT
The State contends the trial court erred in failing to attribute any degree of comparative fault to Conerly for causing the accident. The State contends that Conerly was clearly aware of the puddle of Kool-Aid and failed to take the simple precaution of walking around the puddle. However, an inmate has less freedom of choice than an individual who is not incarcerated and is also subject to disciplinary measures if he refuses to do as he is told. Bridgewater v. State Through Dept. of Corrections, 434 So.2d 383, 385 (La.1983). Considering this, we find no error in the trial court decision not to apportion any fault to Conerly.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal, in the amount of $1,544.35, are assessed to the State of Louisiana through the Department of Public Safety and Corrections.
AFFIRMED.
NOTES
[1] Hon. Philip Ciaccio, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] Act No. 110 of 1946 authorizes the institution of suits against the State of Louisiana, through the Governor and Attorney-General, by certain claimants set forth in Section 2 of the Act, for claims for services, supplies and materials rendered to the Louisiana Public Service Commission from June 30, 1930, to November 14, 1932. This exception does not apply to the case at bar.
[3] Louisiana's current constitution also requires that each bill introduced before the Legislature have a brief title indicative of its object. LSA-Const. Art. 3, § 15 (1974).
[4] LSA-C.C. art. 3501 was enacted by Acts 1983, No. 173, § 1 and became effective January 1, 1984. However, LSA-C.C. art. 3501 reproduces the substance of former article 3547, which was in effect at the time the Act under consideration was passed, and also provided a ten year prescriptive period for money judgments.
[5] In Chaney, the Louisiana Supreme Court found LSA-R.S. 9:5628 to be a prescriptive statute that dispenses with the contra non valentem doctrine's extension of prescription through the discovery rule, which is a feature normally attendant to prescription. Hebert, 486 So.2d at 724.
[6] Article 3, section 35 of the Louisiana Constitution of 1921, in effect at the time the Act under consideration was passed, empowered the Legislature to waive, by passage of special or general laws, the state's immunity from suit and liability. The Act's title does not suggest the Legislature's intent to create such a waiver, nor does the language of the Act evidence any waiver of the State's immunity.
[7] As previously noted, although the doctrine of peremption was not codified in the Louisiana Civil Code at the time the Act was introduced before and passed by the Legislature, it was an established principle of Louisiana jurisprudence. Moreover, after enacting LSA-C.C. arts. 3458-3461 relative to peremption, the Legislature chose not to amend LSA-R.S. 49:112 to refer to the limitation period as one of peremption rather than prescription.