965 So.2d 527 (2007)
Tatiana OSTROWIECKI, et al.
v.
AGGRESSOR FLEET, LTD., et al.
Nos. 2007-C-0462, 2007-C-0463, 2007-c-0466, 2007-C-0470.
Court of Appeal of Louisiana, Fourth Circuit.
August 8, 2007.
*530 Patricia A. Krebs, Paul S. Balanon, King, LeBlanc & Bland, P.L.L.C, New Orleans, LA, for Aggressor Fleet Franchising Inc., Aggressor Fleet, Ltd., and Wayne Hasson.
Phillip A. Wittmann, Dorothy H. Wimberly, Mark E. Jaffe, Stone, Pigman, Walther, Wittmann, L.L.C., New Orleans, LA, for Sondra Rubin and Lilith Rubin.
Richard Stanley, Jennifer L. Thornton, Vicki A. Elmer, Stanley, Flanagan & Reuter, L.L.C., New Orleans, LA, for Tatiana Ostrowiecki, Alexandre Ostrowiecki, and Susan Sverner on Behalf of Minor Child, Julia Helena Ostrowiecki.
Robert C. Clotworthy, Evan T. Caffrey, Phelps Dunbar, L.L.P., New Orleans, LA, for Aventuras Maritimas Okeanos, S.A., and Randall Martinez Chinchilla.
Brian C. Bossier, Richard L. Olivier, Erin H. Boyd, Blue Williams, L.L.P, Metairie, LA, for The Travelers Indemnity Company of America.
(Court composed of Judge CHARLES R. JONES, Judge MICHAEL E. KIRBY, Judge DAVID S. GORBATY).
DAVID S. GORBATY, Judge.
In these consolidated writ applications, defendants, Aggressor Fleet, Ltd., Aggressor Fleet Franchising, Inc., Wayne Hasson, Aventuras Maritimas Okeanos, S.A., Randall Martinez Chinchilla, and the Travelers Indemnity Company of America, seek supervisory review from the partial denial of their exceptions of no cause of action. Additionally, the plaintiffs, Sondra Rubin, Lilith Rubin, and Tatiana Ostrowiecki, et al., seek review of the partial granting of the defendants' exceptions of no cause of action. For the reasons that follow, the writ applications are granted in part and denied in part. The trial court's judgment is, therefore, affirmed in part, reversed in part, and remanded.

STATEMENT OF FACTS
These consolidated matters arise out of an incident that occurred on May 16, 2003, when Bruce Rubin and Israel Ostrowiecki disappeared at sea in the Cocos Islands approximately three hundred miles off the coast of Costa Rica. At the time of their disappearance, Mr. Rubin and Mr. Ostrowiecki were participating in a recreational diving trip aboard a vessel, the D/V Okeanos Aggressor.[1]
Mr. Rubin, a resident of New Mexico, his daughter, Lilith Rubin, and Mr. Ostrowiecki, a resident of Brazil, were three *531 of nineteen passengers who participated in the ten day, live-aboard diving trip. The trip originated from Puntarenas, Costa Rica, from where the passengers journeyed for thirty-six hours on the Okeanos Aggressor to the Cocos Islands. After arriving at the Cocos Islands, the Okeanos Aggressor anchored at various locations, and the passengers took short rides in pengas (smaller excursion boats) to each day's dive sites.
On the day in question, May 16, 2003, the decedents and Lilith Rubin participated in a dive with dive master Randy Wright. Some divers allegedly aborted the dive early, but after about 50 minutes, all divers were back in the penga except for Mr. Rubin and Mr. Ostrowiecki. Searches were conducted, but the two men were never found.
In conjunction with booking their excursion, Mr. Rubin and Mr. Ostrowiecki completed an Application and Release of Liability and Responsibility Agreement. The release of liability portion of the application/release contains a choice of law provision providing that all claims arising under the agreement "shall be determined according to the laws of Louisiana." Although Mr. Ostrowiecki completed the application part of the document, Mr. Ostrowiecki did not sign the release portion of the document.
Two separate suits were filed by Mr. Rubin and Mr. Ostrowiecki's survivors in Civil District Court for the Parish of Orleans, and the suits were later consolidated. The defendants named in the suits include the following:
(1) Aggressor Fleet, Ltd. (AFL), the alleged booking agent for all dive trips aboard vessels operating under the "Aggressor Fleet" franchise, including the D/V Okeanos Aggressor;
(2) Aggressor Fleet Franchising, Inc. (AFFI), the alleged franchisor for the Aggressor Fleet line of vessels;
(3) Aggressors International, Ltd. (AIL), the alleged marketer of vessels operating under the Aggressor Fleet franchise;[2]
(4) Wayne Hasson, the alleged owner of AIL, Operations Manager Captain over all the Aggressor Fleet vessels, and employee of AFL;
(5) Aventuras Maritimas Okeanos, S.A. (AMO), the alleged owner and operator of the D/V Okeanos Aggressor pursuant to a franchise agreement with AFFI and, allegedly, AFL;
(6) Randall Martinez Chinchilla, the alleged President of AMO;
(7) Randal Wright, dive master for the May 16, 2003, diving trip, as an alleged employee of AFL, AFFI, AIL, Hasson and/or AMO;
(8) Certain Underwriters at Lloyds, London, as the alleged liability insurer of AFL, AFFI, AMO, Wayne Hasson and Randal Wright;
(9) Travelers Property Casualty Company, as the alleged commercial generality liability insurer of AFL and Wayne Hasson, as employee of AFL;
(10) The Shipowner's Mutual Protection and Indemnity Association (Luxembourg), as the alleged vessel insurer of AMO, AFFI and AFL.
Both the Rubin and the Ostrowiecki petitions allege four causes of action: (1) survival; (2) wrongful death; (3) negligent and/or grossly negligent misrepresentation; and (4) breach of contract. The Rubin plaintiffs allege a fifth cause of action: intentional and/or negligent infliction of emotional distress.
*532 The survival claim, wrongful death claim, and negligent and/or grossly negligent misrepresentation causes of action are all based upon the following allegations of negligence and/or gross negligence on the part of the defendants:
(1) Failure to provide a safe diving environment, including the failure to provide safety lines during each dive and the failure to anchor the penga before each dive.
(2) Failure to test diving condition;
(3) Failure to inspect properly and maintain in working order the Okeanos Aggressor's equipment, including the radio in the penga and the fuel supply;
(4) Failure to have a means of back-up communication on the penga;
(5) Failure to have in place and implement an effective emergency rescue plan for lost drivers;
(6) Failure to train and properly supervise the crew and staff of the Okeanos Aggressor, including the dive master;
(7) Failure to adequately supervise the guest divers during the dives;
(8) Failure to provide the divers with personal EPIRBS (hand-held devises that emit an electronic locating signal); and
(9) Failure to provide spare diving tanks.
The misrepresentation claims allege that the Aggressor Fleet enterprise made promises of a safe diving experience, and made assertions, principally on their website, that safety was of the utmost priority. The plaintiffs contend that Mr. Ostrowiecki, Mr. Rubin, and Lilith Rubin relied on these assertions when purchasing their trip on the Okeanos Aggressor. Moreover, the plaintiffs assert that the defendants breached their duty to provide truthful and accurate information regarding the level of safety employed and that the breach thereof led to Mr. Rubin and Mr. Ostrowiecki's disappearance and Lilith Rubin's emotional distress.
The plaintiffs' breach of contract claim avers that Mr. Rubin, Lilith Rubin, and Mr. Ostrowiecki relied on the defendants' assertions of providing a safe diving experience, and that the agreement reached between the parties implied that in return for the cost of the trip, the defendants agreed to provide a safe diving environment, a well trained crew, and a well equipped and fully operating vessel. As a consequence of the breach of these contractual obligations, the plaintiffs maintain that the defendants are liable to the plaintiffs for their pecuniary and non-pecuniary damages pursuant to Civil Code article 1994 et seq.
Finally, the Rubin plaintiffs allege that Lilith Rubin, who was present on the dive trip, and Sondra Rubin, who was in Costa Rica at the time of her husband's disappearance, are entitled to recover for intentional and/or negligent infliction of emotional distress. The Rubin plaintiffs allege that Wayne Hasson ordered the Okeanos Aggressor to continue the dive trip despite Mr. Rubin's disappearance, and he refused Mrs. Rubin's pleas to retrieve Lilith Rubin from the Okeanos Aggressor. The Rubin plaintiffs also allege that Wayne Hasson publicly blamed Lilith Rubin and the decedents for their disappearance.
Several defendants, including Aggressor Fleet and Wayne Hasson, as well as Aventuras Maritimas Okeanos (AMO) and Randall Martinez Chinchilla, filed Exceptions of No Cause of Action and No Right of Action in both cases. Travelers adopted the exceptions filed by its purported insureds, Aggressor Fleet and Wayne Hasson. All defendants asserted that the remedies available to the plaintiffs are governed *533 exclusively by the Death on the High Seas Act, 46 U.S.C.App. § 761, et seq. ("DOHSA") and, therefore, all of the Louisiana state law claims are preempted and should be dismissed.
The trial court set the exceptions for hearing on October 13, 2006, and the matter was taken under advisement. On March 14, 2007, the trial court signed a judgment granting in part and denying in part the exceptions of no cause of action, and issued accompanying reasons for judgment. Specifically, the trial court granted the defendants' exceptions of no cause of action, finding that the plaintiffs' wrongful death and survivor claims are preempted by DOHSA. The trial court denied the defendants' exceptions of no cause of action as to the plaintiffs' remaining claims of misrepresentation, breach of contract, and emotional distress.
In denying the defendants' exceptions of no cause of action, the trial court found that the claims of Mr. Rubin and Mr. Ostrowiecki for breach of contract and negligent misrepresentation are heritable pursuant to La. C.C.P. arts. 426-428, and, therefore, could be brought by representatives of their estates. Furthermore, the trial court found that Sondra Rubin and the Ostrowiecki plaintiffs sufficiently alleged that a stipulation pout autrui existed, which conferred benefits in their favor.
With respect to Lilith Rubin's individual claims for misrepresentation and breach of contract, the trial court found that because she signed a contract with Aggressor the claims are personal to her and not based on her father's death. Similarly, the trial court determined that Lilith Rubin's claims for emotional distress are based on the defendants' treatment of her following the disappearance of her father. We note that although the trial court denied the defendants' exception of no cause of action regarding Lilith Rubin's claim for emotional distress, the judgment is silent as to Sondra Rubin's claim for emotional distress.

LAW AND ANALYSIS
The Death on the High Seas Act provides in pertinent part:
Whenever the death of a person shall be caused by wrongful act, neglect, or default occurring on the high seas beyond a marine league from the shore of any State, or the District of Columbia, or the Territories or dependencies of the United States, the personal representative of the decedent may maintain a suit for damages in the district courts of the United States, in admiralty, for the exclusive benefit of the decedent's wife, husband, parent, child, or dependent relative against the vessel, person, or corporation which would have been liable if death had not ensued.
46 U.S.C.App. § 761.
The recovery in such suit shall be a fair and just compensation for the pecuniary loss sustained by the persons for whose benefit the suit is brought and shall be apportioned among them by the court in proportion to the loss they may severally have suffered by reason of the death of the person by whose representative the suit is brought.
46 U.S.C.App. § 762.
The defendants argue that in holding DOHSA applies and preempts the plaintiffs' wrongful death and survival actions, the trial court erred in not also finding that the plaintiffs' other state law causes of action for misrepresentation and breach of contract are preempted. We agree. As outlined below, there is clear authority that DOHSA preempts the plaintiffs state law claims for misrepresentation and breach of contract that arise out of the deaths of Mr. Rubin and Mr. Ostrowiecki.
*534 In Dooley v. Korean Air Lines Co., Ltd. 524 U.S. 116, 118 S.Ct. 1890, 141 L.Ed.2d 102, (1998), the Supreme Court addressed the issue of whether DOHSA "permits a decedent's estate to recover damages that the decedent would have been able to recover but for his death" and held that under DOHSA no such cause of action was permitted. Id. at 123-124, 118 S.Ct. at 1894-1895. The Dooley plaintiffs argued, "because DOHSA is a wrongful-death statute  giving surviving relatives a cause of action for losses they suffered as a result of the decedent's death  it has no bearing on the availability of a survival action." Id. The court rejected the plaintiffs' argument stating: "DOHSA expresses Congress' judgment that there should be no such cause of action in cases of death on the high seas. By authorizing only certain surviving relatives to recover damages, and by limiting damages to the pecuniary losses sustained by those relatives, Congress provided the exclusive recovery for deaths that occur on the high seas." Id.
Furthermore, it cannot be argued that because the claims of misrepresentation and breach of contract are of a different nature than tort claims, DOHSA has no preclusive effect. DOHSA is implicated "[w]henever the death of a person shall be caused by wrongful act, neglect, or default occurring on the high seas." 42 U.S.C.App. § 761. The expansive nature of "wrongful act, neglect, or default" does not limit the scope of the statute to tort actions sounding in negligence and necessarily includes actions for breach of contract and misrepresentation as jurisprudence on the issue makes clear. In Montgomery v. Goodyear Tire & Rubber Co., 231 F.Supp. 447, 453 (D.C.N.Y.1964), the court found that "Section 1 of the Death on the High Seas Act does not encompass negligence alone, for a breach of warranty is as much a breach of duty as is a negligent act." Id. 231 F.Supp. at 453 (citations omitted). Likewise in Middlleton v. United Aircraft Corp., 204 F.Supp. 856, (D.C.N.Y.1960), the court found that "[I]t is fair to conclude that the breach of an implied warranty is included in the term `wrongful act, neglect or default.'" Id. 204 F.Supp. at 857.
The issue was perhaps most artfully disposed of in Heath v. American Sail Training Ass'n, 644 F.Supp. 1459 (D.R.I., 1986), where the court stated:
A wrongful death claim cast as a contract claim is still a wrongful death claim. The court is compelled to read a stated claim for what it is, not what it purports to be. See, e.g., Fricker v. Town of Foster, 596 F.Supp. 1353, 1358 (D.R.I.1984) (it makes no difference that plaintiff casts some of his allegations in a contract mold if they are, in fact, claims for injuries to the person); Griffin v. Woodhead, 30 R.I. 204, 206, 74 A. 417 (1909) (a tort claim is a tort claim, though labeled by the pleader as sounding in contract). Shorn of the (misleading) contractual characterizations in which they have been cloaked, Counts XI and XII must be read as claims for wrongful death.
* * *
To like effect is State of N.Y. v. Loc. 144, Hotel, Nurs. Home, etc., 410 F.Supp. 225 (S.D.N.Y.1976), where the characterization balance was similarly struck in favor of substance as opposed to form. As in Campbell[ v. McLean Trucking Co., 592 F.Supp. 1560 (E.D.N.Y.1984)], the court peeked behind the plaintiffs' pleadings to find their claims preempted by federal law: "[W]here Congress has explicitly said that the exclusive source of a plaintiff's right to relief is to be a federal law, it would be unacceptable to permit that *535 very plaintiff, by the artful manipulation of the terms of a complaint, to defeat a clearly enunciated congressional objective." Id. at 227 (quoting Hearst Corp. v. Shopping Center Network, 307 F.Supp. 551, 556 (S.D.N.Y.1969)).
It is equally clear that the purposes of DOHSA require that there be a uniform method for disposing of claims anent death on the high seas-and that the provisions of DOHSA itself comprise this homogeneous method. See Tallentire, 106 S.Ct. at 2491; Moragne v. States Marine Lines, Inc., 398 U.S. at 398-401, 90 S.Ct. at 1786-88. Thus, simply calling a wrongful death claim a contract claim, as plaintiffs have attempted to do with Counts XI and XII, cannot effect an end run around DOHSA and stiffarm the manifest intent of the Congress in the bargain.
Id. 644 F.Supp. at 1466.
In Jacobs v. Northern King Shipping Co., Ltd., 180 F.3d 713, (5th Cir.1999), the U.S. Fifth Circuit digested Supreme Court jurisprudence regarding the application of DOHSA as follows:
In 1978, the Supreme Court decided Mobil Oil Corp. v. Higginbotham, 436 U.S. 618, 98 S.Ct. 2010, 56 L.Ed.2d 581 (1978). In that case, relatives of passengers killed in a helicopter crash beyond the territorial limits of Louisiana brought a DOHSA/general maritime law action to recover for the decedent's wrongful death. The Supreme Court addressed whether the decedent's survivors could recover non-pecuniary damages for loss of society under the general maritime law in addition to the pecuniary damages authorized by DOHSA. The Court held that in a case of death on the high seas, DOHSA rather than the general maritime law governs the recoverable damages, and thus non-pecuniary damages could not be recovered in a DOHSA action. Id. at 625-26, 98 S.Ct. at 2015.
The Court stated that because Congress has never enacted a comprehensive maritime code, admiralty courts have often been called upon to supplement maritime statutes. Id. at 625, 98 S.Ct. at 2015. However, the Court distinguished those statutes from the Death on the High Seas Act, which "announces Congress' considered judgment on such issues as the beneficiaries, the limitations period, contributory negligence, survival, and damages." Id. Because the Act addresses the issue of recoverable damages and limits them to pecuniary losses, courts are not "free to `supplement' Congress' answer so thoroughly that the Act becomes meaningless." Id. By enacting a comprehensive death act-DOHSA-Congress "struck the balance" for the Court by limiting survivors to recovery of their pecuniary losses. Id. at 623, 98 S.Ct. at 2014.
The Supreme Court again considered whether the damages provided in DOHSA could be supplemented in yet another context in Offshore Logistics, Inc. v. Tallentire, 477 U.S. 207, 106 S.Ct. 2485, 91 L.Ed.2d 174 (1986). In that case the decedent's relatives sought to recover, in addition to their pecuniary losses authorized by DOHSA, their non-pecuniary losses consisting of loss of companionship and loss of love and affection. Because the plaintiffs were foreclosed by Higginbotham from claiming these damages under the general maritime law, they sought to supplement the allowable damages under DOHSA with the adjacent state death act. The Supreme Court rejected the plaintiffs' arguments that they were entitled to resort to state death acts to supplement their DOHSA remedy. Id. at 232, 106 S.Ct. at 2499. The Court, following *536 Higginbotham's reasoning, held that "`when DOHSA does speak directly to a question, the courts are not free to "supplement" Congress' answer. . . .'" Id. at 232, 106 S.Ct. at 2499 (quoting Higginbotham, 436 U.S. at 625, 98 S.Ct. at 2015). The court concluded that where DOHSA applies-as it did in that case to fix the wrongful death damages-state statutes are preempted. The Court, however, expressly left open the question of "whether the DOHSA recovery for the beneficiaries' pecuniary loss may be `supplemented' by a recovery for the decedent's pain and suffering before death under the survival provision of some conceivably applicable state statute that is intended to apply on the high seas." Tallentire, 477 U.S. at 215 n. 1, 106 S.Ct. at 2490 n. 1.
Id. 180 F.3d at 718-719.
The Jacobs court further explained:
Although the Court in Tallentire left open the question of whether a plaintiff could look to state survival statutes to supplement a DOHSA wrongful death remedy, Dooley effectively closed this gap. Dooley holds that Congress, in DOHSA, has spoken on the availability of a survival action and has chosen not to authorize one. Dooley, 524 U.S. at 116, 118 S.Ct. at 1894-95. Because Congress left no gap in the Congressional scheme capable of being supplemented, the Court declined to authorize a survival cause of action under the general maritime law. The Court's determination in Dooley that Congress has spoken on the availability of a survival action also precludes courts from supplementing an action under DOHSA by resort to state survival acts. As the Court stated in Tallentire, "the conclusion that the state statutes are preempted by DOHSA where it applies is inevitable." Tallentire, 477 U.S. at 232, 106 S.Ct. at 2499.
Id., 180 F.3d at 719-720.
The question presented in Jacobs was whether DOHSA also preempted a state law survival action. The court concluded that the reasoning of Higginbotham, Dooley and Tallentire, taken together, definitively reveals that DOHSA provides the exclusive remedy and preempts state survival actions.
Likewise, in Sacks v. Quiros, XXXX-XXXX, (La.App. 5 Cir. 5/30/01), 789 So.2d 719, the Louisiana Fifth Circuit Court of Appeal ruled that Dooley clearly leads to the conclusion that DOHSA precludes state survival actions as well as state wrongful death actions. The court noted:
To hold otherwise would contradict the notion that Congress intended with the passage of the DOHSA to insure uniformity of recovery for all claims arising out of death occurring on the high seas because of negligence.
Id. p. 3, 789 So.2d at 721.
The plaintiffs further argue that the choice of law provision contained in the application/release should govern whether DOHSA is applicable to their wrongful death and survival claims. Specifically, the plaintiffs contend that the choice of law provision means what it says and that the law of Louisiana should govern their claims against the defendants and not the Death on the High Seas Act.
The defendants argue simply that the choice of law provision does nothing to affect the outcome as Louisiana law necessarily incorporates federal law, noting that it is axiomatic that the law of any state includes federal law.[3] Indeed, the *537 U.S. Supreme Court has observed that providing a contract is to be governed by "state law does not signify the inapplicability of federal law, for `a fundamental principle in our system of complex national polity' mandates that `the Constitution, laws, and treaties of the United States are as much a part of the law of every State as its own local laws and Constitution.'" Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta, 458 U.S. 141, 157, 102 S.Ct. 3014, 3024, 73 L.Ed.2d 664 (1982) (quoting, Hauenstein v. Lynham, 100 U.S. 483, 490, 25 L.Ed. 628 (1879)).
In Fantastic Fakes, Inc. v. Pickwick International, Inc., 661 F.2d 479, (5th Cir. 1981), the court was faced with a choice of law provision in a copyright licensing agreement which specified that Georgia law would be applicable. Explicating the preemption concept the Fifth Circuit held:
Important to the proper resolution of these questions is an understanding of the extent to which Georgia law applies versus the scope of application and influence of the provisions and policies of the 1909 and 1976 Copyright Acts. Although the parties stipulated in the licensing agreement that Georgia law would govern the construction and enforcement of their contractual obligations, this does not mean that all rights and obligations created by the copyright acts are superseded by Georgia law. In Sears, Roebuck & Co. v. Stiffel Co., 376 U.S. 225, 229, 84 S.Ct. 784, 787, 11 L.Ed.2d 661 (1964), the Court stated that federal patent and copyright law "like other laws of the United States enacted pursuant to constitutional authority, are the supreme law of the land . . . When state law touches upon the area of these federal statutes, it is `familiar doctrine' that the federal policy `may not be set at naught, or its benefits denied' by the state law." [citations omitted]. Under the 1976 Copyright Act, 17 U.S.C. § 101 et seq., the scope of federal copyright protection was expanded and its preemptive nature codified. 17 U.S.C. § 301. A choice of law provision, therefore, merely designates the state whose law is to be applied to the extent its use is not preempted by nor contrary to the policies of the 1909 and 1976 Copyright Acts.
Id. at 482-483.
In de la Cuesta, 458 U.S. at 152-153, 102 S.Ct. at 3022, the Supreme Court discussed the doctrine of preemption and its application as follows:
The pre-emption doctrine, which has its roots in the Supremacy Clause, U.S. Const., Art. VI, cl. 2, requires us to examine congressional intent. Pre-emption may be either express or implied, and "is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose." Jones v. Rath Packing Co., 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604 (1977). Absent explicit pre-emptive language, Congress' intent to supersede state law altogether may be inferred because "[t]he scheme of federal regulation may be so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it," because "the Act of Congress may touch a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject," or because *538 "the object sought to be obtained by federal law and the character of obligations imposed by it may reveal the same purpose." Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947).
Even where Congress has not completely displaced state regulation in a specific area, state law is nullified to the extent that it actually conflicts with federal law. Such a conflict arises when "compliance with both federal and state regulations is a physical impossibility." Florida Lime & Avocado Growers, Inc. v. Paul, 373 U.S. 132, 142-143, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248 (1963), or when state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," Hines v. Davidowitz, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941). See also Jones v. Rath Packing Co., 430 U.S., at 526, 97 S.Ct., at 1310; Bethlehem Steel Co. v. New York Labor Relations Bd., 330 U.S. 767, 773, 67 S.Ct. 1026, 1029, 91 L.Ed. 1234 (1947).
Alternatively, plaintiffs argue that because some of the negligent acts that gave raise to the decedents' deaths purportedly occurred on land and not on water, DOHSA has no application to the plaintiffs' causes of action. In support, the plaintiffs look to the language of DOHSA which provides a cause of action "[w]henever the death of a person shall be caused by wrongful act, neglect, or default occurring on the high seas . . ." 46 U.S.C.App. § 761. The jurisprudence, however, does not support the plaintiffs' argument.
Addressing whether the language of the statute includes actions where the negligent acts occurred on shore, the court in Motts v. M/V GREEN WAVE, 210 F.3d 565, (5th Cir.2000), concluded that DOHSA's application is not limited to negligent acts that actually occur on the high seas. The court stated:
DOHSA provides, in pertinent part, that "[w]henever the death of a person shall be caused by wrongful act, neglect, or default occurring on the high seas . . . the personal representative of the decedent may maintain a suit for damages in the district courts of the United States." 46 U.S.C.App. § 761. At first glance, the plain text of this statutory provision seems to indicate that DOHSA is implicated only when the wrongful act precipitating death occurs on the high seas. See Lacey v. L.W. Wiggins Airways, Inc., 95 F.Supp. 916, 918 (D.Mass.1951) ("It appears that the phrase `occurring on the high seas' . . . is adjectival of `wrongful act, neglect, or default', rather than of `death'. . . . The statute is taken to mean, therefore, that the wrongful act, neglect or default which caused the death must have occurred on the high seas if a right of action is to exist.").
As subsequent courts have interpreted DOHSA, however, the statute's application is not limited to negligent acts that actually occur on the high seas. The Supreme Court has repeatedly noted that when the death itself occurs on the high seas, DOHSA applies. See Offshore Logistics, Inc. v. Tallentire, 477 U.S. 207, 218, 106 S.Ct. 2485, 91 L.Ed.2d 174 (1986).
Id. 210 F.3d at 569.
In Sacks, where the death arose out of a diving accident, the plaintiffs argued that because the negligence attributed to the defendants, i.e., inadequate training, occurred on shore, jurisdiction under DOHSA was precluded, even though the death occurred on the high seas. Citing Motts, the court found plaintiffs' argument was without merit. Sacks, XXXX-XXXX, 789 So.2d at 720.
*539 With respect to Lilith Rubin's personal claims for misrepresentation and breach of contract, it is evident from the petition that both of these claims arise out of the death of her father and, therefore, preempted by DOHSA. In her petition, Lilith Rubin has charged that the defendants violated "promises of safety" and a breach of duty to provide truthful and accurate information, "which misrepresentations resulted in Mr. Rubin's disappearance and death and Lilith Rubin's emotional distress." Accordingly, in the context of the foregoing discussion, the trial court incorrectly denied the defendants' exceptions of no cause of action as to Lilith Rubin's claims of misrepresentation and breach of contract, as these claims are encompassed by DOHSA.
In connection with Lilith Rubin's claim for intentional and/or negligent infliction of emotional distress, it is asserted that this is an independent cause of action that arises from the defendants' conduct toward Lilith Rubin, and, thus, is not dependent on Mr. Rubin's death to be actionable. Therefore, the Rubin plaintiffs maintain that DOHSA is not implicated with respect to the claim for intentional and/or negligent infliction of emotional distress. We agree.
In order to recover for intentional infliction of emotional distress, a plaintiff must establish: (1) the conduct of the defendant was extreme and outrageous; (2) the emotional distress suffered by the plaintiff was severe; and (3) the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct. White v. Monsanto Co., 585 So.2d 1205, 1209 (La.1991). Although the Louisiana Supreme Court in White did not define extreme and outrageous, the Court noted, "the conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." Id.
Applying these precepts, we find that the Rubin plaintiffs have alleged sufficient facts in the petitions filed herein to state a cause of action of intentional and/or negligent infliction of emotional distress. More specifically, it is alleged: (1) representatives of Aggressor confined Lilith Rubin to the vessel after her father's disappearance; (2) Sondra Rubin attempted on numerous occasions to get Lilith Rubin off the vessel; (3) a representative of Aggressor instructed the crew to continue the trip despite the loss of Mr. Rubin and Mr. Ostrowiecki; (4) Wayne Hasson refused to give Sondra Rubin the telephone number to the vessel and refused to allow her access to the vessel to retrieve her daughter; (5) Wayne Hasson publicly blamed Lilith Rubin for her father's disappearance; and (6) such extreme and outrageous acts caused Lilith and Sondra Rubin to suffer severe mental anguish and emotional distress.
Facially, it appears that these allegations are sufficient to state a claim for intentional and/or negligent infliction of emotional distress. Although the petitions lack a certain element of specificity with respect to the statements made by Wayne Hasson, and the level of emotional distress suffered by the plaintiffs, the totality of facts pled appear sufficient to withstand an exception of no cause of action. Accordingly, we find no error in the trial court's denial of the defendants' exception of no cause of action regarding Lilith Rubin's claim for intentional and/or negligent infliction of emotional distress.
We further find that the trial court erred in determining that Sondra Rubin and the Ostrowiecki plaintiffs sufficiently *540 alleged that a stipulation pour autrui existed. In the first instance, the Rubin plaintiffs stated explicitly in their opposition to the defendants' exceptions that they were not asserting the existence of a stipulation pour autrui. Furthermore, a review of the petitions, as amended, reflects that no such claim was raised.
The Louisiana Civil Code provides that a contracting party may stipulate a benefit for a third person called a third-party beneficiary. La. C.C. art.1978. Under Louisiana law, such a contract for the benefit of a third party is referred to as a "stipulation pour autrui." Paul v. Louisiana State Employees' Group Benefit Program, 99-0897, p. 5 (La.App. 1 Cir. 5/12/00), 762 So.2d 136, 140. As explained by the Louisiana Supreme Court in Joseph v. Hospital Service Dist. No. 2 of Parish of St. Mary, 2005-2364 (La.10/15/06), 939 So.2d 1206,
The most basic requirement of a stipulation pour autrui is that the contract manifest a clear intention to benefit the third party; absent such a clear manifestation, a party claiming to be a third party beneficiary cannot meet his burden of proof. Paul, 99-0897 at 7-8, 762 So.2d at 141-142; see also, Doucet v. National Maintenance Corporation, 01-1100, pp. 6-7 (La.App. 1 Cir. 6/21/02), 822 So.2d 60, 66. A stipulation pour autrui is never presumed. The party claiming the benefit bears the burden of proof. See LSA-C.C. art. 1831.
Id. at p. 9, 939 So.2d at 1212.
In the present case, there is no evidence that a stipulation pour autrui existed in favor of the plaintiffs. Accordingly, we find that the trial court erred in allowing the plaintiffs to maintain an action for breach of contract based on a stipulation pour autrui.
Finally, the record reflects that in the Rubin plaintiffs' Second Amended Petition for Damages, Lilith and Sondra Rubin asserted a claim for bystander damages pursuant to La. C.C. art. 2315.6 as a component of their emotional distress claims. We note that the defendants have not specifically addressed the article 2315.6 claims here or at the trial court level. The trial court's judgment is silent on this issue. As such, this court shall take no action on these claims.

CONCLUSION
For the foregoing reasons, we find the trial court correctly maintained the defendants' exceptions of no cause of action, finding that the plaintiffs' survival and wrongful death claims are preempted by DOHSA. The plaintiffs' writ application is, therefore, denied.
The defendants' writ application is granted in part, and the trial court's judgment denying the defendants' exceptions of no cause of action as to the plaintiffs' misrepresentation and breach of contract claims is reversed. These claims are clearly preempted by DOHSA.
Finally, the defendants' writ application regarding the trial court's denial of the exceptions of no cause of action as to Lilith Rubin's claim for intentional and/or negligent infliction of emotional distress is denied.
The matter is remanded for further proceedings in accordance with this ruling.
WRITS GRANTED IN PART AND DENIED IN PART. JUDGMENT AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
NOTES
[1] The Okeanos Aggressor is part of the larger "Aggressor Fleet" franchise, which is allegedly managed primarily from the Louisiana office of defendants Aggressor Fleet, Ltd. and Aggressor Fleet Franchising, Inc.
[2] AIL has been dismissed from the suit for lack of personal jurisdiction.
[3] Through the Supremacy Clause, U.S. CONST. Art. VI, cl. 2, the law of any state includes federal law, and federal law is as much the law of a state "as laws passed by the State legislature." Howlett v. Rose, 496 U.S. 356, 357, 110 S.Ct. 2430, 110 L.Ed.2d 332 (1990). "The Constitution and laws made in pursuance thereof are supreme: that they control the constitution and laws of the respective States, and cannot be controlled by them." McCulloch v. Maryland, 17 U.S. (4 Wheat.) 316, 426, 4 L.Ed. 579 (1819).